In re HARRY C. PARTRIDGE, JR. & SONS, INC., Debtor.

HARRY C. PARTRIDGE, JR. & SONS, INC., Plaintiff,

v.

M & R CONSTRUCTION CORP. and American Insurance Company, Defendants.

Bankruptcy No. 85 B 20398.

85 Adv. 6022.

United States District Court, S.D. New York.

May 7, 1985.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendants.

Ballon, Stoll & Itzler, New York City, for debtor and plaintiff; Kazimer & Ittig, P.C., New York City, of counsel.

## DECISION ON MOTION TO RECOVER CONTRACT RETAINAGE

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The debtor in this case, Harry C. Partridge, Jr. & Sons, Inc., seeks an eight

percent solution with respect to the dispute involving the installation of detention cells for New Jersey's Camden County Correctional Facility. The defendant, M & R Construction Corp. ("M & R"), is general contractor at the job site under a contract with the Camden County Board of Chosen Freeholders (the "Camden Board"), which provides that the Camden Board is entitled to withhold a sum equal to two percent of the amount of aggregate invoices submitted by M & R until the contract is satisfactorily completed. The debtor's subcontract with M & R provides that M & R is entitled to withhold a sum equal to ten percent of the amount of the aggregate invoices submitted by the debtor until the debtor's subcontract is satisfactorily completed. The subcontract also provides that if M & R's retainage provision with Camden Board is reduced the debtor would be entitled to a reduction in the retainage provision under the subcontract. The debtor maintains that the difference between the two percent retainer called for under M & R's contract with Camden Board and the ten percent retainer withheld by M & R under its subcontract with the debtor, namely a difference of eight percent, constitutes a reduction in the retainer provision entitling the debtor to the return of eight percent of the amount of the aggregate invoices submitted by the debtor to M & R. On the other hand, M & R asserts that there has been no reduction in the retainage provision under its agreement with Camden Board and the debtor is not entitled to the return of any retained amounts because the debtor has not completed the contract.

Independent of the dispute between the parties as to the merits, M & R contends that this is not a core proceeding within the meaning of 28 U.S.C. § 157(b) and that this court may hear this matter pursuant to 28 U.S.C. § 157(c), with any final order to be entered by a district judge after considering the proposed findings and conclusions of law of this court.

## FINDINGS OF FACT

1. The debtor, Harry C. Partridge, Jr. & Sons, Inc., a corporation organized under the laws of the State of New York, filed with this court on September 18, 1984, its voluntary petition for reorganizational relief under Chapter 11 of the Bankruptcy Code.

2. The defendant, M & R Construction Corp., is a corporation organized under the laws of the State of New Jersey and is engaged in business as a general contractor in the construction of municipal properties and buildings.

3. The defendant, American Insurance Company, is a Pennsylvania corporation which furnished a surety bond to the Camden Board and guaranteed the payment and further performance by M & R in accordance with the general contract.

4. In April of 1983, M & R entered into a prime contract with the Camden County Board of Chosen Freeholders for the general construction at the Camden County Correctional Facility in Camden, New Jersey, at the price of $18,079,500. Pursuant to the requirements of the prime contract and the laws of the State of New Jersey, M & R furnished to the Camden Board a surety bond for the faithful performance of the prime contract of M & R and its payments to subcontractors, materialmen, laborers, suppliers and other persons, firms or corporations which perform labor or supply materials, provisions, or other supplies to M & R with respect to the prime contract.

5. Article 5 of the agreement between the Camden Board and M & R provides that Camden Board is entitled to withhold a sum equal to two percent of the amount of the aggregate invoices submitted by M & R until M & R has satisfactorily completed its entire obligations under the prime contract. The two percent retainage provision was established in recognition of the fact that M & R had also furnished a surety bond to Camden County to guaranty its faithful performance under the prime contract.

6. Immediately upon being awarded the prime contract in April of 1983, M & R heard from the debtor's representative, Mr. Terry Partridge, who expressed the debtor's interest in bidding for the subcontract

work involving the installment of detention equipment in accordance with the plans and specifications for the job in question. Terry Partridge and Mr. J. Mac Gregor for the debtor reviewed the plans and specifications for a few weeks and determined that the debtor should prepare and submit a bid for the job for four million dollars.

7.  By letter dated May 4, 1983, M & R confirmed that the job would be awarded to the debtor and that a purchase order would follow. However, there ensued a delay during which time no contract was entered into between M & R and the debtor. By letter dated October 6, 1983, Anne Oswalt, vice president of the debtor, wrote to M & R complaining that the debtor had "performed an awful lot of work on this project without a proper contract."

8.  In April of 1984, M & R forwarded to the debtor a formal agreement covering the debtor's subcontractual obligations at the Camden County construction facility.

9.  Article 4 of the subcontract between M & R and the debtor provides that M & R was entitled to withhold a sum equal to ten percent of the amount of the aggregate invoices submitted by the debtor until the debtor has satisfactorily completed its entire obligations under the subcontract. This language is expressed in the subcontract as follows:

ARTICLE 4

PROGRESS PAYMENTS

The Contractor shall pay the Subcontractor monthly progress payments on the basis of invoices which are to be submitted in DUPLICATE on or before the XXX of each month, representing the value of labor performed and/or material delivered and properly stored during the month. When the General Contractor's invoice has been approved and payment is received, payment will be made to the Subcontractor by the 25th of the following month on the basis of 90% of such invoice for each monthly submission. The retained percentage will be paid promptly upon approval by the Architect

and payment by the Owner of the General Contractor's final invoice, and upon receipt of a Release of Liens form acceptable to the General Contractor and executed by the Subcontractor. Invoices received after the XXX ofthe month will not be processed for the current billing.

10.  When the debtor's vice president, Anne Oswalt, reviewed the proposed subcontract she found the ten percent retainage provision to be objectionable. She advised Mr. Peter Silva of M & R that ten percent was unwarranted. She testified that he said that M & R could not give up more than it had and that he would not take it out of M & R's pocket. Anne Oswalt was not aware of the fact that the prime contract between Camden Board and M & R called for a two percent retainage. However, that was the maximum amount allowed to be retained under general contracts with New Jersey Counties, in view of the fact that general contractors are required to furnish performance and payment bonds to guaranty their performances. Thus, although Anne Oswalt objected to the ten percent retainage, she did not offer to furnish a performance and payment bond on behalf of the debtor in consideration for a lower retainage figure. The best that she could do was to negotiate the inclusion of certain additional typed language with respect to a conditional reduction as follows:

If General Contract allows for reduction of retainage, subcontract retainage will be reduced.

11.  On September 7, 1984, less than two weeks before the debtor filed its Chapter 11 petition, the debtor returned to M & R the signed and accepted copy of the printed subcontract that was originally submitted to the debtor in April of 1984.

12.  Mr. James Roney, the president of M & R testified that it was his practice to require a ten percent retainage from all subcontractors who did not furnish performance and payment bonds to guaranty their performance under the subcontracts in the same fashion as M & R had done by furnishing a performance and payment

bond to Camden County. There was no evidence that anyone on behalf of M & R had ever represented that M & R's prime contract with the Camden Board also called for a ten percent retainage. Indeed, M & R's prime contract with the Camden Board as well as the plans and specifications for the job in question were public knowledge and available for inspection by anyone who might be interested.

13. In February of 1985, Anne Oswalt requested that M & R reduce the retainage under the subcontract to two percent and that the eight percent differential be returned to the debtor. M & R disputes the debtor's entitlement to the eight percent differential.

14. The pertinent provisions in the prime contract, which are incorporated by reference into the subcontract, upon which the debtor relies are:

> 9.5.2 The Contractor shall promptly pay each Subcontractor upon receipt of payment from the Owner, out of the amount paid to the Contractor on account of such Subcontractor's work, the amount to which said Subcontractor is entitled, *reflecting the percentage actually retained, if any, from payments to the Contractor on account of such Subcontractor's work.*...

(Emphasis added).

Additionally, Article 5.3.1 of the General Conditions reads in part as follows:

> [Contractor] ... shall allow to the Subcontractor, unless specifically provided otherwise in the Contractor-Subcontractor Agreement, the benefit of all rights, remedies and redress against the Contractor that the Contractor, by these Documents, has against the Owner.... The Contractor shall make available to each proposed Subcontractor, prior to the execution of the Subcontract, copies of the Contract Documents to which the Subcontractor will be bound by this paragraph 5.3, *and identify to the Subcontractor any terms and conditions of the*

> *proposed Subcontract which may be at variance with the Contract Documents.*

(Emphasis added).

15. The debtor reasons that the subcontract and the prime contract, when read together, require M & R to pay to the debtor the amount allowed on account of the debtor's work including the actual retained percentage based on a two percent retainage. The debtor contends that a ten percent retainage constitutes a variation in the terms and conditions under the prime contract, which called for a two percent retainage, and that such variation should have been identified by M & R as a specific variation, as required under Article 5.3.1 of the General Conditions.

16. The parties have stipulated that the amount of the aggregate invoices submitted by the debtor under the subcontract totals $2,220,472. Hence, M & R has retained ten percent of this figure, or $222,047.20, whereas the debtor contends that the retainage should be reduced to $44,409.44 and that the eight percent differential, or $177,637.76 should be turned over to the debtor.

## DISCUSSION

### *Jurisdiction*

■ There is no question that the district court has original and exclusive jurisdiction of this Chapter 11 case pursuant to 28 U.S.C. § 1334(a) and that it has original, but not exclusive, jurisdiction of all civil proceedings arising in or related to this case in accordance with 28 U.S.C. § 1334(b). Moreover, the district court has exclusive jurisdiction of all of the debtor's property as of the commencement of this case wherever located, as provided in 28 U.S.C. § 1334(d). Furthermore, this bankruptcy court has jurisdiction pursuant to the district court's general referral order, dated July 10, 1984, entered in accordance with 28 U.S.C. § 157(a). The only jurisdictional issue in dispute relates to M & R's assertion that the debtor's action under the subcontract to recover an additional eight percent of the retainage funds constitutes

a proceeding arising in or related to a case under title 11 [11 U.S.C. §§ 101–151326] which this court may hear, but may not determine by the entry of a final order, because it is not a core proceeding within the meaning of 28 U.S.C. § 157(b).

When dealing with a non-core proceeding that is otherwise related to a case under title 11, a bankruptcy judge may not make a final determination, but must submit proposed findings of fact and conclusions of law to the district court in accordance with the procedure delineated in 28 U.S.C. § 157(c)(1). Pursuant to 28 U.S.C. § 157(b)(3), this court must determine whether or not the debtor's action involves a core proceeding under subsection (b).

Although the first cause of action asserted in the debtor's complaint requests a recovery of damages for an alleged breach of contract, and while the second cause of action seeks a recovery for an asserted breach of a fiduciary duty owed by a general contractor to a subcontractor, the debtor's aim is to obtain from M & R a turnover of the eight percent retainage differential which the debtor contends should not have been held back by M & R under the subcontract in question. Indeed, M & R does not claim an unfettered right to these funds and admits in its answer that M & R should be entitled to withhold the retained funds "until the Debtor has satisfactorily completed its entire obligations under the Subcontract." Upon fulfillment of this condition, the debtor would be entitled to a return of the funds so retained by M & R. Hence, the debtor views the eight percent differential as improperly retained property of the estate which should be turned over to it by M & R. A proceeding to obtain an order "to turn over property of the estate" is defined expressly as a core proceeding by 28 U.S.C. § 157(b)(2)(E). That the contract in question involves a matter of construction which is controlled by state law does not detract from the fact that the essence of this action implicates a turnover proceeding which is expressly defined as a core proceeding. Indeed, 28 U.S.C. § 157(b)(3) clearly declares that "[a] determination that a proceeding is not a core

proceeding shall not be made solely on the basis that its resolution may be affected by State law." Therefore, this court is authorized to hear and determine this matter in accordance with 28 U.S.C. § 157(b)(1) and to "enter appropriate orders and judgments, subject to review under Section 158...."

### *The Eight Percent Differential*

When the debtor's vice president, Anne Oswalt, reviewed the proposed subcontract that was submitted to her by the general contractor, M & R, there was no question in her mind that it called for a ten percent retainage of payments from M & R. Indeed, she attempted to negotiate a lower retainage percentage, but without success. M & R's representative never stated that his firm was also operating under the same retainage percentage with the Camden Board. He simply said that he could not give her what he did not have and that he would not take funds out of M & R's pocket. This was merely tight-fisted negotiating language. There was no hiding the fact that while the retainage figure in the subcontract was ten percent, the retainage percentage in M & R's general contract with the Camden Board was two percent. In fact, it was a matter of public knowledge that under New Jersey law, a public unit such as the Camden Board could not withhold from a general contractor in connection with the job in question more than two percent. *See* N.J.Stat.Ann. § 40A:11–16.3 (West Supp.1984–1985). However, M & R, as the general contractor, was required to put up a payment and performance bond to guaranty its faithful performance under the general contract. On the other hand, the debtor did not put up a similar payment and performance bond with respect to its obligations under the subcontract. In these circumstances, M & R included a ten percent retainage figure in its subcontracts with those subcontractors, such as the debtor, who did not post payment and performance bonds. In her negotiations with M & R, Anne Oswalt did not offer to post a payment and perform-

ance bond in consideration for a lower retainage rate. Hence, she had no basis for believing that the retainage rate in the subcontract with M & R should be anything less than ten percent. The most that she was able to obtain was certain additional language to the effect that "[if] General Contract allows for reduction of retainage, subcontract retainage will be reduced." This language contemplated a future reduction if the retainage under the general contract between M & R and the Camden Board was reduced. There was no reduction in the two percent retainage withheld by the Camden Board. Therefore, the debtor now takes the position that it is entitled to a two percent retainage rate as of the very inception of the subcontract.

The debtor's position is unwarranted. Initially, it should be observed that the place for performance is New Jersey where the detention facility is to be constructed. Article 7.1.1 of the general contract, which is incorporated in the subcontract, provides that the contract is governed by the law where the contract is to be performed, namely New Jersey.

■ The terms of the subcontract clearly call for a ten percent retainage rate between the debtor and M & R. This is the figure that the parties agreed upon when they entered into the contract. The court must construe the agreement as made and will not make a new contract for the parties in the guise of interpreting the writing. As stated in *Flynn v. Hartford Fire Insurance Company*, 146 N.J.Super. 484, 370 A.2d 61, 63–64 (App.Div.) (citations omitted), *cert. denied*, 75 N.J. 5, 379 A.2d 236 (1977):

> It is not the function of the court to make a better contract for the parties than they themselves have seen fit to enter into or to alter it for the benefit of one party and to the detriment of the other.

*See also James v. Federal Ins. Co.*, 5 N.J. 21, 73 A.2d 720, 721 (1950); *Weinstein v. Sheer*, 98 N.J.L. 511, 120 A. 679, 680 (1923); *Kupfersmith v. Delaware Ins. Co.*, 84 N.J.L. 271, 275, 86 A. 399, 401 (1913); *ac-cord In re Community Medical Center*, 623 F.2d 864, 866 (3d Cir.1980); *Independent Oil Workers v. Mobil Oil Corp.*, 441 F.2d 651, 653 n. 4 (3d Cir.1971).

■ The debtor's reference to paragraphs 9.5.2 and 5.3.1 in the General Conditions does not create an ambiguity or reflect any inconsistency in terms. Paragraph 9.5.2 simply obligated M & R, as the general contractor, to pay to its subcontractors, including the debtor, the amounts to which they are entitled under their various agreements with M & R. Thus, pursuant to paragraph 9.5.2 of the General Conditions, the debtor is entitled to the amounts specified in the subcontract less the ten percent retainage, as agreed to. Paragraph 5.3.1 of the General Conditions required M & R to make available to the debtor, as a subcontractor, copies of the contract and the specifications, which M & R did. M & R was also required to identify any terms and conditions in the subcontract which were at variance with the contract documents. The eight percent retainage differential was not at variance with the contract documents because M & R, as the general contractor, was required to post a payment and performance bond in order to qualify for the job. As the qualified general contractor, M & R was entitled, as a matter of law, to the benefit of N.J.Stat. Ann. § 40A:11–16.3, which provided that under New Jersey law, the Camden Board could not retain more than two percent of the funds due the general contractor. There was no similar provision affecting the retainage rates with respect to subcontractors. Hence, there was no variance which required separate identification because the debtor was charged with the knowledge that the Camden Board could not withhold from a general contractor, as retainage, more than two percent. The debtor could have asked for a two percent retainage if it were willing to post a payment and performance bond. This it did not do.

Accordingly, since the language in the subcontract is plain, clear and unambiguous, there is no basis for the court to

make a new agreement for the parties by construction.

## CONCLUSIONS OF LAW

1. The court has jurisdiction of this action pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a).

2. The debtor's action, which seeks a turnover of funds from the defendants, is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(E), which this court may hear, determine and with respect to which it may enter appropriate orders and judgments.

3. The debtor has not sustained its burden of proving that it is entitled to a retainage rate of less than ten percent under its subcontract with M & R in connection with the construction of a correctional facility for the Camden Board.

4. The debtor's action to recover the eight percent differential withheld by M & R in connection with the construction of the correctional facility for the Camden Board is dismissed.

SETTLE ORDER on notice.