In re **WORLD FINANCIAL SERVICES CENTER, INC.**, a California corporation, dba World Financial Systems, Bargain Furniture, and Bargain Furnishings, Appliances & Electronics, Debtor.

Harold S. TAXEL, Trustee in Bankruptcy, Plaintiff,

v.

COMMERCEBANK, a California corporation, Defendant.

Bankruptcy No. 84–04452–H7.
Adv. No. C86–0116–H7.

United States Bankruptcy Court,
S.D. California.

Sept. 29, 1986.

See also, Bkrtcy., 60 B.R. 645.

Edward A. Mendoza, Gendel, Raskoff, Shapiro & Quittner, Los Angeles, Cal., for plaintiff (trustee).

Michael Gerard Fletcher, Sharon R. Biederman, Members of Frandzel & Share, Irvine, Cal., for defendant.

## MEMORANDUM DECISION

JOHN J. HARGROVE, Bankruptcy Judge.

### I.

### INTRODUCTION

Defendant Commercebank moves this court to abstain from hearing this adversary proceeding pursuant to 28 U.S.C. § 1334(c)(2), or to order a change of venue, and for a determination of whether this adversary proceeding is a core proceeding. A hearing was held on June 3, 1986 wherein this court tentatively denied Commercebank's motion for mandatory abstention and tentatively found that venue was proper. After argument, this court requested additional briefs by the parties on the issue of discretionary abstention under 28 U.S.C.

§ 1334(c)(1) in view of the recent Ninth Circuit Court of Appeals' decision in *Piombo Corporation v. Castlerock Properties*, 781 F.2d 159 (9th Cir.1986).

## II.

### SUMMARY OF FACTS

Briefly, the facts underlying this adversary proceeding are as follows:

On or about June 12, 1985, Margaret Arguelles ("Arguelles"), an employee operating under court authority and shareholder of the debtor, opened a checking account in the name of "World Financing Center" at the South Coast Regional Office of Commercebank. Between June 12, 1985 and October 23, 1985 Arguelles diverted from the debtor's estate approximately $72,000.00 in customer checks made payable to World Financial. Specifically, Arguelles endorsed the checks with a rubber stamp bearing the inscription "Pay to the Order of Commercebank, South Coast Regional Office, Costa Mesa, California, For Deposit Only, World Financing Center, 002 606623" and deposited these checks into the World Financing Center account at Commercebank. Arguelles was not authorized to endorse checks on behalf of World Financial. The trustee alleges that Commercebank converted the checks and the funds payable pursuant to said checks for its own use and that it was negligent in honoring such checks. The trustee has demanded that Commercebank return these funds to the estate and alleges Commercebank has refused. Commercebank responds that it is unable to turnover any property and that a previous Order for Preliminary Injunction entered November 13, 1985 requiring turnover has been fully complied with.[1]

The issue before this court is whether this court a) has jurisdiction to hear this proceeding; b) whether this proceeding is a core matter pursuant to 28 U.S.C. § 157; c)

whether this court will abstain; and d) whether venue is proper.

## III.

### DISCUSSION

28 U.S.C. § 1334 and 28 U.S.C. § 157 define the limits of the subject matter jurisdiction of the bankruptcy court. 28 U.S.C. § 1334(a) provides that " ... the district courts shall have original and exclusive jurisdiction of all cases under Title 11." 28 U.S.C. § 1334(b) provides that " ... the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under Title 11, or arising in or related to cases under Title 11." This jurisdictional scheme provides for four categories of cases and proceedings:

a) A case under Title 11;

b) A civil proceeding arising under Title 11;

c) A civil proceeding arising in a case under Title 11; and

d) A civil proceeding related to a case under Title 11.

28 U.S.C. § 157(a) provides that "[e]ach district court may provide that any or all cases under Title 11 and any or all proceedings arising under Title 11 or arising in or related to a case under Title 11 shall be referred to the bankruptcy judges for the district." The United States District Court for the Southern District of California has referred these cases to the bankruptcy judges for this district by General Order 312–c dated October 2, 1984 as amended by General Order 312–d dated May 15, 1985. 28 U.S.C. § 157(b) provides that a bankruptcy judge may hear and determine all cases under Title 11 and all core proceedings arising under Title 11, or arising in a case under Title 11 subject to review by the district court.[2]

---

**1.** Commercebank contends that it complied with an Order of this court entered in the adversary proceeding *Taxel v. Arguelles, et al.*, adversary Case No. C85–0959–H11 and turned over the sum of $593.33, which represented the balance in the account at the time of service of the Order.

**2.** Orders and judgments entered according to 28 U.S.C. § 157(b) may also be subject to review by the Bankruptcy Appellate Panel for the Ninth Circuit.

28 U.S.C. § 157(c) provides that a bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under Title 11, but in such proceeding, the bankruptcy judge may not enter a final order or judgment without the consent of the parties, but shall submit proposed findings of fact and conclusions of law to the district court subject to *de novo* review.

### A. Determination of Core Status:

Pursuant to 28 U.S.C. § 157(b)(3), this court must determine whether a proceeding is a core proceeding under this subsection or is a non-core proceeding which is defined as a proceeding that is otherwise related to a case under Title 11.[3]

28 U.S.C. § 157(b)(2)(A)–(O) provides a non-exhaustive list of core proceedings. 28 U.S.C. § 157(b)(2)(A) and (O) are "catch-all" categories concerning administration of the estate and "other proceedings affecting the liquidation of assets of the estate or the adjustment of the debtor/creditor or equity security holder relationship."

Recently, the United States Court of Appeals for the Ninth Circuit held that " ... [s]tate law *contract* claims that do not specifically fall within the categories of core proceedings enumerated in 28 U.S.C. § 157(b)(2)(B)–(N) are related proceedings under § 157(c) even if they arguably fit within the literal wording of the two catch-all provisions, sections 157(b)(2)(A) and (O). To hold otherwise would allow the bankruptcy court to enter final judgments that this court has held unconstitutional." *Piombo Corporation v. Castlerock Properties*, 781 F.2d 159, 162 (9th Cir.1986). The court held further that "... [w]e are persuaded that a court should avoid characterizing a proceeding as 'core' if to do so would raise constitutional problems. (Citations omitted). The apparent broad reading that can be given to § 157(b)(2) should be tempered by the *Marathon* decision." (Citation omitted). *Id.*

In *Castlerock*, the debtor filed a Chapter 11 proceeding, thereby automatically staying a state court contract action involving Castlerock and Piombo. Piombo filed for relief from the automatic stay and Castlerock filed an answer incorporating state law contract counterclaims against Piombo. The bankruptcy judge elected to try the counterclaims but did not enter an order denying the relief from stay. Piombo conceded subject matter jurisdiction but objected to the propriety of trying the counterclaims in the relief from stay proceeding. Piombo's objections were denied and Piombo brought a motion to be allowed to bring its own counterclaim, but the motion was denied.

Thereafter, at the pretrial conference, Piombo objected to the bankruptcy court's jurisdiction relying on *Northern Pipeline Construction Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). On stipulation of the parties the district court vacated the bankruptcy court's judgment which had been entered for Castlerock in order to determine whether the bankruptcy court could properly enter judgment. The district court held that the bankruptcy court did not have jurisdiction to determine the substantive issues and vacated the automatic stay. The Ninth Circuit Court of Appeals affirmed the district court's Order.

In light of *Piombo Corporation v. Castlerock Properties, supra,* this court would be forced to find, at the very least, that were this adversary proceeding based upon a state law contract claim, that the proceeding therefore, would not be core. However, both parties agree that the trustee is not proceeding on state law *contract* claims. While the holding of *Castlerock* applies only to state law contract claims and whether said claims are governed by § 157(b)(2)(A) and (O), this court is not prevented from examining the underlying complaint in this adversary proceeding in light of the principals enunciated in *Castlerock.*

---

**3.** 28 U.S.C. § 157(b)(3) further provides that *"[a] determination that a proceeding is not a core proceeding shall not be made solely on the basis* that its resolution may be affected by State law." (Emphasis added)

On its face, this proceeding appears to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E) in that the trustee in his First Amended Complaint prays for turnover of property. However, a closer examination by this court reveals that the trustee has characterized a cause of action for turnover, when in fact the cause of action for turnover of property should not lie. The court notes that on February 21, 1986, the trustee filed his Complaint for conversion, negligence, and money had and received based solely upon state law. On April 10, 1986, Commercebank filed its motion for abstention or to change venue. Subsequently, prior to the hearing on Commercebank's motion, the trustee retained new counsel and on April 23, 1986 new counsel was duly substituted. Thereafter, on May 8, 1986, the trustee filed his First Amended Complaint alleging two additional causes of action, to wit, turnover of property pursuant to 11 U.S.C. § 542(a) and failure to use ordinary care in presentment pursuant to California Commercial Code § 4202(1)(a).[4]

An examination of the trustee's turnover cause of action reveals that the trustee seeks a turnover order requiring Commercebank to pay the trustee the proceeds of the checks which were deposited at Commercebank, as the collecting bank, and paid to Commercebank by the various drawee banks. Specifically, the trustee alleges that "Commercebank accepted for deposit to the account of 'World Financial Center' at Commercebank checks made payable to World Financial and endorsed by 'World Financing Center', and presented the same for collection to the banks upon which said checks had been drawn, and collected the funds payable pursuant to said checks from said banks without the authorized endorsement of World Financial or any authorized agent thereof." The trustee further alleges that the customer checks made payable to World Financial, and endorsed payable to World Financing Center are "property that plaintiff may use, sell, or lease pursuant to 11 U.S.C. § 363." Additionally, the trustee alleges that trustee has demanded the property be delivered to plaintiff and that Commercebank account for such property or the value of such property, and that Commercebank has failed to deliver the property or account for its value.

In support of his contention that his cause of action for turnover of property accords this proceeding core status, the trustee relies on *In re Harry C. Partridge, Jr. and Sons, Inc.*, 48 B.R. 1006 (Bankr.S. D.N.Y.1985). In *In re Harry C. Partridge*, the debtor subcontractor filed an action for breach of a subcontract entered into with defendant general contractor. The subcontract provided that the defendant general contractor would be entitled to a 10% retainage of amounts due to the debtor pending successful completion of the subcontract. The debtor claimed that the correct retainage percentage was 2% and brought the action against defendant general contractor seeking to recover the 8% differential. The court stated:

Although the first cause of action asserted in the debtor's complaint requests a recovery of damages for an alleged breach of contract, and while the second cause of action seeks recovery for an assertive breach of fiduciary duty owed by a general contractor to a subcontractor, the debtor's aim is to obtain from [defendant] a turnover of the eight percent retainage differential which the debtor contends should not have been held back by [defendant] under the subcontract in question. Indeed, [defendant] does not claim an unfettered right to these funds and admits in its answer that [defendant] should be entitled to withhold or retain funds "until the debtor has satisfactorily completed its entire obligations under the subcontract." Upon fulfillment of this condition, the debtor would be entitled to return of the funds still retained by [defendant]. Hence, the debtor views the eight percent differential as improperly retain property of the estate which should be turned over to it

---

**4.** Excepting the turnover action, all the trustee's claims for relief are based on state law.

by [defendant]. ... that the contract in question involves a matter of construction which is controlled by State law does not detract from the fact that the *essence of this action implicates a turnover proceeding which is expressly defined as a core proceeding.* (Emphasis added).

*Id.* at 1010.

In *In re Harry C. Partridge* the court concluded that the claim based on state law did indeed fit the description of a core proceeding pursuant to § 157(b)(2)(E).

11 U.S.C. § 541 defines property of the estate as "all legal or equitable interest of the debtor." 11 U.S.C. § 542 provides that:

"An entity ... in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title ... shall deliver to the trustee, and account for such property or the value of such property...."

11 U.S.C. § 542(a).

The United States Supreme Court has determined that the language of 11 U.S.C. § 541 was not meant to limit the expansive scope of property which is determined to be property of the estate. *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). *See also, In re Professional Sales Corp.*, 48 B.R. 651 (Bankr.N.D.Ill.1985). In a Chapter 11 context, in *Whiting Pools*, the Supreme Court also demonstrated the far reaching application of the bankruptcy court's turnover power. There exists, however, a conflict of authority as to whether mere characterization of a lawsuit as a proceeding to compel turnover will be dispositive of whether the action constitutes a core proceeding.

In *Matter of Baldwin-United Corp.*, the Bankruptcy Court for the Southern District of Ohio held that:

The words "to turnover property of the estate" are terms of art in the bankruptcy context, (cf. *U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983)) and their use by Congress evinces an intention to include all proceedings brought pursuant to 11 U.S.C. § 542 as core proceedings. Since debtors' complaint seeks a turnover of money owed on a debt which is a "matured, payable on demand, or payable on order" under § 542(b), it follows that their action constitutes a "core" proceeding.

48 B.R. 49, 53 (Bankr.S.D.Ohio 1985).

In *Matter of Baldwin-United Corp.*, the debtors commenced an action by filing a "relatively simple" turnover complaint seeking to collect on four installment loans made by Baldwin-United Corp. to defendant Morley Thompson, while he was president of the company. The loans were issued pursuant to a company program whereby employees could borrow money to purchase Baldwin-United stock. Thompson executed four promissory notes totalling $1,061,500.00 to purchase 34,500 shares of Baldwin-United common stock. Defendant Thompson "complicated" the litigation by filing an answer containing nine affirmative defenses combined with four counterclaims and setoffs and a jury demand. Notwithstanding Thompson's answer, affirmative defenses, counterclaims and setoffs, the bankruptcy court found that debtor's complaint was a proper turnover proceeding pursuant to 28 U.S.C. § 157(b)(2)(E). In so finding, the court summarized *In re Perry, Adams & Lewis Securities*, 30 B.R. 845, 855 (Bankr.W.D. Mo.1983), as follows:

Section 542(b) of the Bankruptcy Code ... makes the matured rights of the estate to collect under a contract or on account a matter of summary turnover jurisdiction ... This, by necessary implication, means that money or property which is the subject of the action to recover matured right to payment under a contract is within the constructive possession of the bankruptcy court. For turnover jurisdiction has always been equated with the inherent summary jurisdiction to recover assets within actual or constructive possession of a bankruptcy court.

*In Matter of Baldwin-United Corp., supra* at 53.[5]

■ As noted earlier, the courts disagree as to whether mere characterization of a lawsuit as a proceeding to compel turnover will be dispositive of whether the action constitutes a core proceeding or whether the court is required to look behind the characterization at the underlying allegations. This court holds that the mere characterization of a lawsuit as a proceeding to compel turnover is not dispositive of whether the action constitutes a core proceeding and that this court is required to look behind the characterization to determine that in fact a turnover proceeding is warranted. As such, this court rejects the approach urged by trustee, by the *Baldwin-United* court, and by the court in the case relied upon by the trustee, *In re Harry C. Partridge, Jr. & Sons, Inc.*, 48 B.R. 1006 (Bankr.S.D.N.Y.1985). Conversely, this court agrees with the analysis of Judge Harold C. Abramson in *In re Satelco*, 58 B.R. 781 (Bankr.N.D.Tex.1986).

In *In re Satelco*, the debtor, long distance telephone service supplier, filed fifteen adversary proceedings, each entitled Complaint to Compel Turnover of Property. The proceedings differed only with respect to the individual defendant named and the amount claimed. The substance of the complaints were virtually identical and alleged that the defendants contracted with debtor for long distance telephone service, that the defendants used the services and incurred charges pursuant to the agreements, that the defendants refused to pay for such services upon demand by the debtor, that such charges represented funds which were property of the estate and that the defendants were obligated, under Bankruptcy Code § 542(a), to pay such charges, plus interest and attorneys' fees as provided by Texas law. In finding that the court lacked jurisdiction over the alleged turnover action, the court held that actions to collect accounts receivable based upon state law contract principles do not fall within the scope of turnover actions as contemplated by § 542 and § 157(b)(2)(E), absent a final judgment from a court of competent jurisdiction, a stipulation, or some other binding determination of liability. *In re Satelco, Inc., supra* at 789.

In analyzing the approach urged by the debtor Satelco, the court held:

> The approach urged by debtor has indeed been recognized and adopted by several courts. *See In re Baldwin-United Corporation*, 12 B.C.D. 913, 915, 48 B.R. 49 (Bankr.S.D. Ohio 1985); *In re Harry C. Partridge, Jr. & Sons, Inc.*, 48 B.R. 1006 (Bankr.S.D.N.Y.1985). Such an approach is, however, fundamentally flawed. It would turn mere allegation into fact; by asserting that the money attributable to an account receivable is property of the estate, a debtor could, under the foregoing authorities, establish the constructive possession necessary for the bankruptcy court to exercise jurisdiction. Unless there is no question remaining as to the liability of the defendant to the estate, e.g., a final judgment from a court of competent jurisdiction or a stipulation by the defendant, it cannot be said that no dispute exists, and the money debtor seeks to recover is not with the debtor's constructive possession. Consequently, this Court cannot exercise jurisdiction over those funds or debtor's claim thereto. *See In re Theobold Industries, Inc.*, 53 B.R. 506, 508 (Bankr.D.N.J.1984).

*In re Satelco, Inc., supra* at 786.

This court agrees with the reasoning employed by Judge Abramson. *See also, In re Century Brass Products, Inc.*, 58 B.R. 838 (Bankr.D.Conn.1986); *In re Arnold Printworks, Inc.*, 54 B.R. 562 (Bankr.D. Mass.1985); *Mohawk Industries v. Robinson Industries, Inc.*, 46 B.R. 464 (Bankr.C. D.Mass.1985); *In re Pierce*, 44 B.R. 601 (Bankr.C.D.Colo.1984); *In re Bokum Resources Corp*, 49 B.R. 854 (Bankr.D.N.M.

---

5. Although the trustee's turnover action in this proceeding is based on 11 U.S.C. § 542(a), the reasoning articulated in *In re Perry Adams and Lewis Securities*, and cited by the *Baldwin-Unit-* ed court is illustrative of those courts which hold that mere characterization of a complaint to compel turnover accords the proceeding core status.

1985); *In re American Energy, Inc.*, 50 B.R. 175 (Bankr.D.N.D.1985).

■ It appears to this court that this proceeding is essentially an action for conversion and negligence. It further appears to this court that Commercebank merely acted as a third party intermediary between the funds properly executed in behalf of World Financial Services Center, Inc. and fraudulently converted by Margaret Arguelles. Specifically, it appears that Commercebank acted as a mere conduit to Arguelles' fraudulent activities. Whether Commercebank is responsible for conversion within the doctrines of California law and/or whether Commercebank was negligent for depositing such funds into the account of World Financing Center must be determined on the merits of the case.[6]

Based upon the foregoing, this court finds that the trustee's cause of action for turnover cannot be enforced through a turnover order, rather his claims against defendant Commercebank are more properly characterized as negligence and conversion actions. Furthermore, they are claims which are vigorously disputed by Commercebank. Therefore, a substantial question remains as to the liability of the defendant, Commercebank. In light of the opinion of the United States Court of Appeals for the Ninth Circuit in *Piombo Corp. v. Castlerock Properties, supra*, a restrictive and narrow reading of 28 U.S.C. § 157(b) is constitutionally required in light of *Northern Pipeline Construction Co. v. Marathon Pipeline Co., supra*.[7]

This court finds that therefore, this proceeding is not a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E).

*B. Determination of "Related" Status:*

In finding that this court lacks jurisdiction over the trustee's complaint as a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E), this court then turns to the question of whether this is a "related proceeding."

The last of the four categories of cases and proceedings upon which the statutory jurisdictional grant is based consists of civil proceedings "related to cases under Title 11." 28 U.S.C. § 1334(b). While a bankruptcy court may hear a civil proceeding related to a case under Title 11, the bankruptcy judge may not render a final judgment, without consent of the parties. Rather, the bankruptcy judge shall submit the proposed findings of fact and conclusions of law to the district court subject to *de novo* review. 28 U.S.C. § 157(c)(1); *In re Castlerock Properties*, 781 F.2d 159, 161 (9th Cir.1985). In order for a bankruptcy court to have jurisdiction over a proceeding brought in its forum, it must, at the outer limits be related to a case under Title 11.

Although the term "related to" or "related proceeding" is not defined in either 28 U.S.C. § 157 or in 28 U.S.C. § 1334, a number of courts and scholars have attempted to define "related proceedings." *See, e.g., In re Cemetery Development Corp.*, 59 B.R. 115 (Bankr.M.D.La.1986); *In re John Peterson Motors, Inc.*, 56 B.R. 588 (Bankr.

---

6. Judge Abramson's reasoning is illustrative. In analyzing the debtor's underlying allegations in *In re Satelco, Inc., supra*, the court found that the debtor was essentially seeking an injunction to compel the defendants to pay money. The court found that issuance of a turnover order, without proceeding on the merits in the proper procedural context of an injunction, was manifestly unfair to the defendants who were being deprived of significant procedural rights. The court found that:

" ... [a] turnover order, unlike a money judgment by a state or federal district court, is less a determination of liability than an exercise of the court's equitable power. While the

typical judgment is a mere 'hunting license' for the prevailing plaintiff to pursue the defendant's assets, a turnover order renders the defendant answerable in equity to the court. To use turnover in the manner suggested by debtor invites the question, what if the defendant cannot or will not pay? Is the defendant then subject to the wide range of sanctions available against those who disobey court orders?"

*In re Satelco, Inc., supra* at 786.

7. See also this court's Opinion in *In re American Manufacturing Technologies, Inc.*, 60 B.R. 645 (Bankr.S.D.Cal.1986).

D.Minn.1986); *In re American Energy, Inc.*, 50 B.R. 175 (Bankr.D.N.D.1985); *In re Bowling Green Truss, Inc.*, 53 B.R. 391 (Bankr.S.D.Ohio 1985); *In re Alexander*, 49 B.R. 733 (Bankr.D.N.D.1985); *Matter of Baldwin-United Corp.*, 48 B.R. 49 (Bankr. S.D. Ohio 1985); *In re Lafayette Radio Electronics Corp.*, 761 F.2d 84 (2nd Cir. 1985); *In re K & L Limited*, 741 F.2d 1023 (7th Cir.1984); *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3rd Cir.1984); *In re Davis*, 730 F.2d 176 (5th Cir.1984); *Matter of Colorado Energy Supply, Inc.*, 728 F.2d 1283 (10th Cir.1984); *Matter of Baldwin-United Corp.*, 52 B.R. 541 (Bankr.S.D. Ohio 1985).

While many courts have defined "related proceedings," this court applies the Third Circuit test for "related proceeding" as follows:

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. E.g., *In re Hall*, 30 B.R. [799] at 802 [ (Bankr.M.D. TN 1983) ]; *In re General Oil Distributors, Inc.*, 21 B.R. 888, 892 n. 13 (Bankr. E.D.N.Y.1982); *In re U.S. Air Duct Corp.*, 8 B.R. 848, 851 (Bankr.N.D.N.Y. 1981); 1 *Collier on Bankruptcy* para. 3.01 at 3–49. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*Pacor, Inc. v. Higgins (In re Pacor)*, 743 F.2d 984, 994 (3rd Cir.1984). *See also, In re Bobroff*, 766 F.2d 797 (3rd Cir.1985).

■ In the instant case, the trustee asserts that Commercebank owes the bankruptcy estate the sum of $72,373.66 alleging claims for conversion, turnover, and negligence, failure to use ordinary care in presentment, and money had and received. It is clear, that the outcome of the trustee's action may have an effect on the estate being administered in bankruptcy. Specifically, a recovery of any assets pursuant to the trustee's lawsuits will result in greater distribution to the creditors of this estate.

Accordingly, this court possesses subject matter jurisdiction to hear this case as a "related proceeding" rather than a "core" proceeding and as such may issue proposed findings of fact and conclusions of law.

*C. Abstention:*

The Bankruptcy Code provides three statutory basis for abstention:

1. "[T]he interest of creditors and the debtor would be better served by such dismissal or suspension." 11 U.S.C. § 305(a);

2. "[I]n the interest of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1); and

3. "Upon timely motion of a party in a proceeding based upon State law claim or State law cause of action, related to a case under Title 11 but not arising under Title 11 or arising in a case under Title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, ... if an action is commenced, it can be timely adjuciated, in a State form of appropriate jurisdiction." 28 U.S.C. § 1334(c)(2).

Inasmuch as Commercebank has not moved for abstention under 11 U.S.C. § 305, abstention on that ground will not be considered.

28 U.S.C. § 1334(c)(2) only applies to cases that meet the following requirements:

1. A timely motion is made;

2. The proceeding is based upon a State law claim or State law cause of action;

3. The proceeding is related to a case under Title 11;

4. The proceeding does not arise under Title 11;

5. The proceeding does not arise in a case under Title 11;

6. The action could not have been commenced in a Court of the United States absent jurisdiction under 28 U.S.C. § 1334; and

7. An action is commenced and can be timely adjudicated in a State form of appropriate jurisdiction. 28 U.S.C. § 1334(c)(2); *In re S.E. Hornsby & Sons Sand and Gravel Co.*, 45 B.R. 988, 996 (Bankr.M.D. La.1985).

Mandatory abstention does not apply to the instant case in that there is no pending state court action. *See, In re S.E. Hornsby & Sons Sand and Gravel Co., supra; Matter of Boughton*, 49 B.R. 312, 13 C.B. C.2d 44 (Bankr.N.D.Ill.1985); *In re Mauldin*, 52 B.R. 838 (Bankr.N.D.Miss.1985); *Matter of Climate Control Engineers, Inc.*, 51 B.R. 359 (Bankr.M.D.Fla.1985); *In re Illinois-California Express, Inc.*, 50 B.R. 232, 13 C.B.C.2d 324 (Bankr.D.Colo. 1985).

However, discretionary abstention pursuant to 28 U.S.C. § 1334(c)(1) does apply to this adversary proceeding. This court may abstain from hearing a bankruptcy case or proceeding related to a case under Title 11, in the interest of justice, or in the interest of comity with state courts or respect for state law. 28 U.S.C. § 1334(c)(1).

This court will exercise its discretion and abstain from hearing this adversary proceeding for the following reasons: It is apparent to this court that this entire adversary proceeding is founded upon the application and interpretation of California state law. While abstention should not be determined merely by whether or not the proceeding is based on state substantive law, *In re Cemetery Development Corp., supra* at 127, it appears to this court that the interpretation of California Commercial Code § 3419, California Commercial Code § 3405 and the applicability of the "imposter rule" is unsettled and requires state law interpretation. *See, Schweitzer v. Bank of America*, 42 Cal.App.2d 536, 109 P.2d 441

(1941); *Cooper v. Union Bank*, 9 Cal.3d 371, 107 Cal.Rptr. 1, 507 P.2d 609 (1973). In this proceeding, the trustee contends that this is "an action to collect payments made on those accounts receivable held by a third party." The trustee contends that Commercebank improperly accepted payments on debtor's accounts receivable and thereby converted those funds and is holding over $72,000.00 of debtor's property. Therefore, the trustee contends that Commercebank is a converter of the debtor's property and is liable to the trustee for its value. *Indiana Plumbing Supply Co. v. Bank of America*, 255 Cal.App.2d 910, 63 Cal.Rptr. 658 (1967); *White Lumber Co. v. Crocker-Citizens Nat'l Bank*, 253 Cal. App.2d 368, 61 Cal.Rptr. 381 (1967); *E.F. Hutton & Co., Inc. v. City National Bank*, 149 Cal.App.3d p. 60, 196 Cal.Rptr. 614 (1983); *Joffee v. United California Bank*, 141 Cal.App.3d 541, 190 Cal.Rptr. 443 (1983). The trustee further contends that according to the holding of *Cooper v. Union Bank, supra*, a collecting bank, such as Commercebank, which accepts for deposit checks with a forged endorsement, retains the collected funds for the benefit of the true owner, even if the collecting bank allows the depositor to withdraw funds from the account.

While this court is mindful of the cases cited by the trustee, *see, Southern Cal. Permanente Medical Group v. Bozinovski*, 148 Cal.App.3d 503, 196 Cal.Rptr. 150 (1980), *Hermetic Refrig. Co., Inc. v. Central Valley National Bank, Inc.*, 493 F.2d 476 (9th Cir.1974), *Jerman v. Bank of America*, 7 Cal.App.3d 882, 87 Cal.Rptr. 88 (1970), this court is of the opinion that the interpretation of California Commercial Code § 3405,[8] the application of the "imposter rule" and the standard commercial reasonableness in the banking industry must be analyzed. Therefore, this court will abstain in the interest of allowing the state court to interpret this application.

---

**8.** California Commercial Code § 3405(1)(a) states:

"An endorsement by any person in the name of a named payee is effective if

(a) An imposter by use of the mails or otherwise as induced the maker or drawer to issue the instrument to him or his confederate in the name of the payee;"

Additionally, this case had been converted to a Chapter 7 case and there is not the administrative urgency typically found in a Chapter 11 case. There is no reorganization effort being contemplated and as such, no pending plan. Additionally, it is far from clear to this court that Commercebank possesses anything belonging to this estate. As stated, this court submits that Commercebank does not possess any property of the estate at all.

## IV.

## CONCLUSION

For the foregoing reasons, this court finds this adversary proceeding is not a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E), but rather, is a related proceeding pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(c)(1). While this court does possess subject matter jurisdiction of the trustee's complaint, and accordingly has a constitutional authority to enter findings of fact and conclusions of law to the district court, this court, in its discretion, abstains from hearing this matter in the interest of justice and respect for state law.

This Memorandum Decision constitutes finding of fact and conclusions of law pursuant to Bankruptcy Rule 7052. Counsel for defendant Commercebank, shall prepare an Order in conformance with this Memorandum Decision within ten (10) days from the date of entry hereof.