ISAAC WEINSTEIN, RESPONDENT. v. MAX SHEER, APPELLANT.

Submitted December 11, 1922—Decided April 20, 1923.

1. Defendant sold a quantity of iron to the plaintiff, and in the written contract of sale agreed that the iron could be removed at any time that suited the plaintiff. *Held*, that the time of removal was unlimited, and that plaintiff was not obliged to remove the iron until notified so to do by the defendant.

2. Defendant sold a quantity of iron to the plaintiff, under a written contract in which he agreed that the iron could remain in his storage yard indefinitely. After about fourteen months, defendant. without any reasonable notice to the plaintiff, sold the iron. *Held*, that the defendant, during the period the iron was stored, occupied the position of a bailee, and as such could not terminate the bailment without reasonable notice, much less sell the iron without authority from his bailor.

---

On appeal from the Supreme Court.

For the respondent, *Stokes & McDermott.*

For the appellant, *La Roy Dickerson* and *Wilfred H. Jayne, Jr.*

The opinion of the court was delivered by

MINTURN, J.    The parties to this action contracted as follows:

"September 1, 1920, Freehold, N. J.

I, the undersigned, received $1,000 on amount of iron as laying in your yard, Manetta avenue, Lakewood, N. J., at the price of 75 cents per hundred pounds in the yard.  The stock can be removed at any time to suit the buyer, J. Weinstein, Freehold, N. J.

MAX SHEER, by M. BERNARD, *Atty.*"

The quantity of iron involved approximated one hundred and ten tons, and the plaintiff after paying for the same in full, and relying upon the letter of the contract, permitted the iron to remain in defendant's yard for about fourteen months, during which period the market price of the commodity had declined.  The plaintiff, in effect, testified that at the time of purchase, he informed defendant that the time allowed him for the removal of the iron would materially affect the price he would pay for it; and the defendant informed plaintiff that upon receipt of $1,000 he might consider the iron "as good as in his [plaintiff's] yard."  Thereafter, and as the jury doubtless concluded, the defendant without any reasonable notice to the plaintiff limiting his time for the removal of the iron, sold it to another, and the plaintiff brought suit to recover the $1,000 paid by him as the consideration for the execution of the contract, less an admitted indebtedness upon another account.

The defendant's contention at the trial, and the substantial ground of appeal, is that, notwithstanding the plain language of the contract, the plaintiff was obliged to remove the iron within a reasonable time, and that having failed so to do, the defendant exercised a legal right in selling it to another.

The rule is indubitable that where parties by written contract have freely chosen their own unambiguous verbal formula, to define their rights and duties, they are bound by the plain terms of their contract; and the court cannot in

the absence of fraud or like recognized equitable ground, reconstruct the contract, for the purpose of making its terms accord with a post contractual conception more suitable to the situation of the parties. Chancellor Kent sums up the doctrine in the statement that we are obliged to give to the language used: "Its just sense and to search for the precise meaning; and one requisite is to give due effect to the contract without adopting either the rule of a rigid or of an indulgent construction." 2 *Kent Com.* 556.

The moral rule as laid down by Dr. Paley is also the accepted rule of law and equity, as well as the law of nations: "To give to the contract the sense in which the person making the promise believed the other party to have accepted it." 2 *Kent Com.* 557.

The language employed by the parties in this instance is conspicuously plain and leaves no room for interpretation, viz., "the stock can be removed at any time to suit the buyer," or transposed in the reverse order. "The vendor will keep the stock until the vendee is ready to remove it." Such a situation, the voluntary creation of the parties, manifestly, may possess its inconvenience so far as the vendor is concerned; but to this it may be answered that the indefinite retention of the stock in the vendor's yard, was one of the elements which induced the purchase, and *ipso facto* became part of the consideration for the purchase. And it may be also observed that it was within the vendor's power to modify or change the contractual situation in that respect before executing the instrument. His contention now is that the language thus employed is equivalent to a limitation that the vendee must remove the stock within a reasonable time.

The delimitation of time by judicial construction for the performance of an act within a reasonable time, arises in those cases where no time is specified for the performance of an act; or where by reason of the peculiarity of the transaction, the parties *ex necessitate* have been held to have so contracted. 6 *R. C. L.* 946, and cases.

Where the contract expressly provides for its execution within a specific time, the instrument evidencing the plain will of the parties necessarily controls and obviates any attempt at judicial interpretation; for, as was stated by Chief Justice Beasley in *Douglass* v. *Freeholders,* 38 *N. J. L.* 214, regarding the language of a statute: "When the words of a statute and their meaning are clear, and they are not rendered dubious by the context, they cannot be controlled by judicial construction." The same rule is applicable to contracts. 6 *R. C. L.* 837, and cases; *Delamater* v. *Miller,* 1 *Cow. (N. Y.)* 75; *Drew* v. *Ellison,* 60 *Vt.* 401; *Ruderow* v. *State,* 31 *N. J. L.* 515; *Kupfersmith* v. *Delaware Insurance Co.,* 84 *Id.* 275.

The rights of the parties in the situation created by this contract arise *aliunde* the contract, and are of a post contractual nature resulting from the sale of the iron, which terminated the express contractual status of vendor and vendee, and thereafter by reason of the language under consideration, and the conduct of the parties, evolved the relationship of bailor and bailee, under a contract of bailment, with its corresponding duties and obligations. With the consummation of the contract, and the passing of title to its subject-matter, the vendee committed the care and custody of the iron to the vendor, who thus became bailee, under an implied agreement that he would use ordinary care to safely keep the iron until the bailor would demand it.

We have in that situation the *"depositum"* of the civil and common law as defined by Lord Holt: "A bailment of goods to be kept for the bailor and returned upon demand without a recompense." *Coggs* v. *Bernard,* 2 *Ld. Raym.* 913; *Thomas* v. *B. & P. R. R.,* 10 *Metc. (Mass.)* 472.

The duty imposed by law in such a status is that the bailee is responsible "only for gross neglect or for a violation of good faith." 2 *Kent Com.* 560; *Foster* v. *Essex Bank,* 17 *Mass.* 479.

To terminate such bailment, and the onerous situation thus assumed by the bailee, notice of a positive and definitive char-

acter was necessary upon the part of the bailee, giving to the bailor a reasonable but a certain fixed time within which to remove the goods, and thus impose the responsibility for the future care and custody of the goods upon the bailor. *Nipp* v. *Diskey*, 81 *Ind.* 214; 6 *R. C. L.* 946, and cases.

In this instance no such procedure was adopted; but the defendant without reasonable and definitive notice to the owner of the iron assumed the status of a trespasser by selling the iron without authority to another. For this illegal assumption of ownership, trover and conversion at the suit of the bailor was the appropriate remedy at common law. 3 *R. C. L.* 110, and cases.

The plaintiff, however, waived this trespass, and, treating the contract as rescinded by the defendant's illegal act, instituted suit for the amount of plaintiff's payment, upon the well-settled legal conception that *ex equo et bono* an action of *assumpsit* or upon the case was implied by law in his favor, as the adequate method for restoring the legal and equitable status *quo ante* of the parties. *Whitcomb* v. *Brant*, 90 *N. J. L.* 245.

The judgment will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, GARDNER, ACKERSON, VAN BUSKIRK, JJ. 15.

*For reversal*—None.