79 So.2d 659 (1955)
BEACH RESORT HOTEL CORPORATION, a Florida corporation, and Abraham Rosen, Petitioners,
v.
Bernard R. WIEDER, Joseph Amigo, Yetta Rosen, Palwi, Inc., and Max Orovitz, as Receiver, Respondents.
Supreme Court of Florida. En Banc.
February 25, 1955.
Rehearing Denied May 9, 1955.
Meyer, Weiss & Rosen, Miami Beach, and Ward & Ward, Miami, for petitioners.
Sibley & Davis, Miami Beach, for Bernard R. Wieder and Joseph Amigo.
Milton M. Ferrell, Miami, for Yetta Rosen.
HOBSON, Justice.
This case involves a lease. Plaintiffs below were Wieder and Amigo, owners of 50% of the stock of Palwi, Inc., the lessee corporation. Defendants included Yetta Rosen, owner of the balance of the stock in the lessee corporation, Abraham Rosen, who is her father, Beach Resort Hotel Corporation, the lessor (wholly owned by Abraham Rosen), and Palwi, Inc., lessee. The bill of complaint, filed in equity, alleged that on August 28, 1951, Beach Resort Hotel *660 Corporation leased to Palwi, Inc., the Surfside Plaza Hotel, with furnishings, for the term of five years, with an option to renew for an additional five years. The rental was $100,000 per year, and the lessee was to advance security in the sum of $100,000. The lessee was obligated, under the lease, to make certain specified improvements, to cost not in excess of $200,000, and to be paid for by the lessee $90,000 in cash and the balance from profits of the hotel as and when made. This provision of the lease reads as follows:
"Lessee's Obligation To Make Improvements:
"The Lessee agrees that it will, as soon as it is permitted to do so by the competent governmental authorities, install and build a new swimming pool in accordance with a sketch of the same which is hereto attached and made a part hereof and will erect ten (10) cabanas and cabana deck in accordance with a sketch of the same which is hereto attached and made a part hereof, and will install a central air conditioning system of the kind and type as may be agreed upon by the parties hereto and will tile all guest bathrooms in accordance with a sketch which is attached hereto, will redecorate the lobby by refurnishing the same either with new furniture or reupholstering the existing furniture, by repainting, and by installing new drapes and rugs and by doing such other things as may be necessary to give the said lobby a pleasing and inviting appearance. The Lessee will modernize the front and ocean side entrances of the building in accordance with a sketch of the same attached hereto.
"Notwithstanding the fact that the Lessee undertakes to accomplish the above improvements as soon as it is possible to do so, the parties agree that at such time as the Lessee has spent for such improvements the sum of Ninety thousand ($90,000.00) Dollars, it shall not be required to continue with such improvements, excepting only as the money for such improvements, becomes available from the net proceeds of the hotel, and the Lessee shall not be required to furnish additional money in excess of the sum of Ninety thousand ($90,000.00) Dollars just above referred to, other than that money which may be obtained from the net proceeds of the hotel operation or which may be obtained by financing which can be repaid out of the net proceeds of the hotel operation, and providing further that the total amount of money to be expended by the Lessee as hereinabove provided, shall not be more than Two hundred thousand ($200,000.00) Dollars.
"At such time as the improvements are made and completed, they shall immediately become the sole and exclusive property of the Lessor and shall be returned unto the Lessor upon the expiration date of this lease agreement, free from any lien of any kind or nature whatsoever so far as any of the actions of the Lessee are concerned."
At the time the lease was entered, and as part of the same transaction, Abraham Rosen gave the plaintiffs an option to purchase half of the stock of the lessor corporation for $150,000, subject to an aggregate mortgage indebtedness of $600,000.
The theory of the plaintiffs' case was that the lessor had ordered improvements in excess of $90,000, knowing that the lessee did not have the money to pay for them and that the hotel could not be open for the winter season in consequence, and after thus making performance by the lessee impossible, the lessor served notice of cancellation of the lease. The bill alleged that Yetta Rosen had joined with her father in his purpose to obtain the cancellation of the lease in this manner. It prayed that the court hold the lease valid, enjoin its cancellation, decree that the plaintiffs should pay for improvements in excess of $90,000 only out of profits from the operation of the hotel, liquidate both lessor and lessee corporations, and appoint a receiver to take charge of the hotel.
*661 On December 17, 1951, the court appointed a receiver to operate the hotel, and on December 18, 1951, authorized the receiver to borrow $200,000 at 6% interest on receiver's certificates (by consent of the parties) "for the purpose of completing construction work now in progress upon the property and premises described in the bill of complaint herein, and for the purpose of paying the cost of certain air-conditioning equipment to be installed in said hotel premises * * *" and to make these certificates a lien against the lessor's interest if sufficient, otherwise against the interest of lessee in the hotel. On April 7, 1952, the receiver obtained authority from the court, over lessor's objection, to execute notes to complete the purchase of about $39,000 worth of furniture, rugs, drapes and other personal property which had been ordered by the lessee and the receiver. Under provisions of the lease lessor was not liable for the furnishing of additional personal property.
On October 23, 1952, the court entered a final decree holding that the lease was valid, that the lessee had paid $90,000 toward improvements but was obligated to pay the lessor an additional $110,000 from hotel profits, that the lessor was liable for all receiver's certificates and that its property would be sold in default of payment of same, that the lessee was entitled to hotel profits, that possession of the hotel and its furnishings was to be delivered immediately to the lessee, and that the receiver was to be retained and not discharged, and taxing all costs against the lessor. We affirmed this final decree without opinion, Beach Resort Hotel Corp. v. Wieder, Fla., 66 So.2d 65. Certiorari was also petitioned for from this order, and was denied, 66 So.2d 307.
On petition of the plaintiffs, the court on December 4, 1952, enjoined defendant Yetta Rosen from participating in the management of the hotel and gave the management of same to the plaintiffs.
On defendants' petition for an order on the mandate of this court, the chancellor, on September 2, 1953, ordered the cause referred to an accountant, Mr. Sidney Lefcourt, who had had charge of the receiver's books, for the submission of a detailed audit of the affairs of the hotel, the period covered to be divided into three sub-periods:
1. Operation by the lessee corporation from August 20, 1951, the commencement date of the lease, until the date the receiver was appointed, in December, 1951;
2. The period of time of the receiver's operation, running from December, 1951, to about November 1, 1952;
3. The period of operation by the lessee under plaintiff Wieder, from about November, 1952, to the filing date of the report.
The report was filed on or about August 31, 1953.
On October 23, 1953, the receiver petitioned the court for directions, alleging that the receivership estate had assets of less than $4,000 and obligations to become due on specified dates totalling about $294,000 (including principal of $225,000 on the receiver's certificates and $13,500 interest on same, both due on January 2, 1954). On October 30, 1953, the defendant Beach Resort Hotel Corporation filed a response to the receiver's petition, exceptions to the receiver's report and the Lefcourt report aforementioned, and motion to surcharge the receiver. The receiver was therein alleged to have commingled the proceeds from the sale of the certificates with the profits from the hotel. The Lefcourt figures were accepted as in the main correct, but petitioners contended that lessor was due, among other things, the sum of $105,000 "for collateral purchase of furniture or for maintenance and repair items not called for in the lease and for which the landlord is in no way responsible; that these items are and should be treated as an investment or capital outlay on behalf of the tenant, Palwi, Inc., which will require a balance sheet to be prepared by the Commissioner which will reflect these payments as an investment or capital account by Palwi, Inc., and not charged to expense or against operations so as to defeat any profit accruing out of the operation by Palwi."
*662 On December 30, 1953, the court entered its "order on accounting supplemental to final decree" and it is from this order that petitioners, Beach Resort Hotel Corporation and Abraham Rosen, seek certiorari in the present proceedings. This order approved the Lefcourt report "except as the same may be modified herein" and overruled all exceptions thereto. The order continued as follows:
1. "Exhibit C of the accountant's report indicates that profits made by the receivership which belong to Palwi, Inc., is the sum of $79,072.90.
2. "The next question is the amount of rental which is due to the landlord, Beach Resort Hotel Corporation, for the first year under the lease while the premises were occupied and the hotel was operated by the Receiver. The lease requires the payment of $100,000. as rental. This sum was not paid by the receiver. $79,072.90 came to the receiver's hands, which is a profit belonging to Palwi, Inc. The sum was expended for the benefit of the landlord, and this, therefore, leaves an indebtedness due for rent to the landlord for the first year of $20,927.10. On May 6, 1953, Palwi, Inc., advanced for the account of the landlord, the sum of $20,000. This should be credited against the balance due for rent, leaving Beach Resort Hotel Corporation due the sum of $927.10.
3. "The next problem presented involves the disposition to be made of the profit gained by Palwi, Inc., from October 1, 1952 to August 31, 1953, which is shown by Exhibit D of the report, and amounts to $54,391.77. However, as above set forth, $20,927.10 was a carry-over loss. This leaves a net profit of $33,464.67. Under Paragraph (c) of the final decree, Palwi, Inc., is required to pay over `the net proceeds derived' from the operation of the leasehold of Beach Resort Hotel Corporation, in reduction of the $113,977.95 due from Palwi, Inc., to the landlord, as is provided in that paragraph of the decree. The figure of $113,977.95 rather than $110,000.00 is used as the Lefcourt report shows that the actual sum expended for improvements is $96,022.05. The figure of $90,000.00 stated in the final decree is conclusive on the issue there decided.
4. "This does not mean that the entire profit without regard for a reserve for taxes is to be thus paid over. The Court concludes that a reasonable sum as a reserve for such purpose is $5,000.00. The excess of reserve over actual taxes should be paid to Beach Resort Hotel Corporation against improvements owed for, immediately after the filing of the tax return by Palwi, Inc., for the fiscal year ending September 30, 1953. This leaves a balance of $28,464.67 which should be paid by Palwi, Inc., to the landlord, or to the receiver, for the account of the landlord, $15,000 immediately and $13,464.67 on or before February 1, 1954. This leaves the remainder still to be paid for improvements under Paragraph (c) of the final decree of $80,513.28 plus whatever amount is expended by Palwi, Inc., for income taxes for the year ended September 30, 1953.
5. "The option price of the stock of Beach Resort Hotel Corporation should be $227,550.65 rather than $150,000.00 as stated in the option agreement of August 28, 1951, the increase being one-half of $155,101.30, the amount of the excess improvements.
6. "This order does not attempt to adjudicate the loan balances on the books of Palwi, Inc., and Beach Resort Hotel Corporation, which must be taken into consideration by the parties.
7. "The expenses and costs for the accountant's work be and the same is hereby fixed at $2,000.00, and the said sum is taxed as costs against Beach Resort Hotel Corporation."
[The paragraphs of the above order have been numbered for convenient reference. The original is unnumbered.]
*663 Paragraph 2 of the above order recites that Palwi's profit for the first year, of $79,072.90, "was expended for the benefit of the landlord". The record affords no basis for this conclusion, and this sum should not have been credited against rent.
Exhibit B of the Lefcourt report shows the following expenditures:

Total Improvements called for
 by the Lease $221,176.03
Improvements not called for by
 the Lease 40,586.22
Improvements Undistributed
 (mostly construction payroll,
 impossible to apportion) 55,491.86
Furniture, Fixtures & Equipment
 purchased, not called
 for by Lease 37,847.19
 ___________
Total for Improvements $355,101.30

Since the lessee was obligated under the lease to pay $200,000 for improvements under the terms and conditions indicated above, the court regarded expenditures in excess of this sum, or $155,101.30, as "excess improvements" (see paragraph 5 of the above order). The record shows that a considerable portion of these "improvements" were of an impermanent nature, which could not in any way benefit the lessor, yet the entire amount of the "excess improvements" was charged against the lessor's interest in the hotel. Apparently in an effort to do some equity on behalf of the lessor in this situation and in recognition of the fact that lessor was entitled to some credit for "excess improvements", the court proceeded to abrogate the option agreement between the parties and write a new agreement, although it was wholly without power so to do there being no showing of mutual mistake or fraud, by increasing the option price to an amount representing half of the "amount of the excess improvements".
It is well settled that courts may not rewrite a contract or interfere with the freedom of contract or substitute their judgment for that of the parties thereto in order to relieve one of the parties from the apparent hardship of an improvident bargain. Savage v. Horne, 159 Fla. 301, 31 So.2d 477; Quinerly v. Dundee Corp., 159 Fla. 219, 31 So.2d 533; Medard v. Paulson, Fla., 37 So.2d 902; Camichos v. Diana Stores Corp., 157 Fla. 349, 25 So.2d 864; Pierce v. Isaac, 134 Fla. 666, 184 So. 509; Windham v. Windham, 152 Fla. 362, 11 So.2d 797; International Ass'n of Machinists v. State, 153 Fla. 672, 15 So.2d 485.
"`The court can not, in the absence of fraud or the like recognized equitable ground, reconstruct the contract, for the purpose of making its terms accord with a post contractual conception more suitable to the situation of the parties.'" City of Camden v. South Jersey Port Commission, 1948, 2 N.J. Super. 278, 63 A.2d 552, 566, quoting from Weinstein v. Sheer, 1923, 98 N.J.L. 511, 120 A. 679. See 3 Corbin on Contracts Sec. 541. Moreover if it were permissible for the court to make a new contract for the parties, the attempt to balance the equities in this case by so doing does not equalize the equities but, on the contrary, results in inequity to the lessor because it leaves the lessee in the position of choosing whether or not he will pay to the lessor one half of the "excess improvements". This is true because the lessee has the right to elect whether he will or will not exercise the option.
It appears that the court has charged every conceivable expense of the receivership and the receiver's operation against the lessor, as a penal measure, as a comparison of the situation of the parties before the litigation with their present situation will show. The report of the court's own auditor does not support the conclusion reached by the court. Also, it was conclusively shown that the receiver had commingled the receipts from the operation of the hotel with the proceeds from the receiver's certificates, but the only reaction of the court to this fact was to saddle the lessor with the results of the receiver's failure to keep proper accounts.
The challenged order is quashed, with directions to the court to make an accurate determination of the amount of permanent improvements, from which the lessor corporation will benefit, and restrict the lessor's *664 liability to those improvements, plus only those other improvements specifically found to have been separately contracted for by the lessor. Costs should be re-apportioned equitably between the parties, taking into account the commingling of the funds by the receiver, as disclosed by the detailed audit.
The petition for writ of certiorari is granted and the order reviewed herein is hereby quashed.
TERRELL, ROBERTS and DREW, JJ., concur.
MATHEWS, C.J., and THOMAS and SEBRING, JJ., dissent.
MATHEWS, Chief Justice (dissenting).
This is the third appearance of this case in this Court. When the case first appeared it was on an appeal from a final decree, which appeal was prosecuted by Beach Resort Hotel Corporation and Rosen. On the appeal from the final decree, transcript of record was filed in this Court on December 20, 1952, the original brief of the appellants was filed February 27, 1953, and reply brief on June 10, 1953, and the appeal from the final decree was affirmed on June 26, 1953. 66 So.2d 65. On the second appearance a petition for certiorari was filed by Beach Resort Hotel Corporation and Rosen. This petition was denied by this Court, without an opinion, on January 14, 1953.
After all proceedings were disposed of in this Court, there was nothing left for the lower court to do except to review reports of the receiver, appointed by the Court with the consent of all parties, and to pass upon the accounts of the receiver.
This litigation has been going on for some years and the records, briefs and transcripts filed in this Court amount to several hundred pages. In a record of this kind it is possible to pick out particular items and point to such items, standing alone and unconnected with the entire proceedings, as being erroneous. But in discussing a particular item of accounting in a proceeding of this kind, such item must be considered in connection with all of the proceedings in the case.
An attempt has been made to show that the Chancellor rewrote the contract for the parties. There is no merit in this contention. The record in this case shows that all deviations from the original contract were done with the full knowledge, consent and approval of the appellants in this case and they were bound thereby.
This particular appeal is from an order of the Chancellor approving the receiver's accounts. The petitioners contend that the receiver is short approximately $88,000 because he has spent funds without the order of the Court for obligations not properly chargeable against the receivership. The Chancellor concluded and found that the obligations were chargeable against the receivership. The receiver was appointed by the Court with the consent, acquiescence and approval of all parties to the proceeding, and he issued his receiver's certificates by agreement of all of the parties. All of the funds received from the receiver's certificates were spent with the knowledge and consent of the petitioners.
This litigation had its inception in a dispute about the interpretation of that section of a lease concerning improvements. It is of paramount importance that we review the file and determine what has actually been adjudicated by the Chancellor in and by the final decree rendered on October 23, 1952. The bill of complaint alleged that the improvements required under the lease:
"could have been constructed and completed for the sum of $90,000.00. The lessee corporation, Palwi, Inc., was able to pay the cost thereof from the funds then in hand contributed by plaintiffs and defendant, Abraham Rosen, as aforesaid. After the commencement of said improvements, said Abraham Rosen notified the contractor that he wanted to make additional improvements *665 upon the said hotel premises, consisting of the following:
 "`Pool and cabanas
 Installing entirely new front
 New boiler
 Re-wiring entire hotel
 Purchase of air-conditioning equipment
"The reasonable cost of said additional improvements is about $200,000.00. The lessee corporation did not then and does not now have the funds to pay the cost of said improvements, and is unable to pay for same.
"VIII.
"Plaintiffs notified the contractor and the said Abraham Rosen that the lessee corporation, Palwi, Inc., was not obligated to make the said additional improvements under its lease, and was not in a position to make or pay for said improvements, and directed the contractor not to engage upon the work necessary to accomplish said improvements. Whereupon said Abraham Rosen notified the contractor that he would furnish the money for making said improvements, and that he had funds available for such purpose and ordered said improvements to be made, all contrary to the agreement entered into by and between the lessor corporation, Beach Resort Hotel Corporation, and the lessee corporation, Palwi, Inc. The said contractor has at all times taken orders from and has acted under the direction and control of the said Abraham Rosen and he has ignored the instructions and orders given by plaintiffs as aforesaid.
"IX.
"Said contractor has set about making the additional improvements order by said Abraham Rosen. Said improvements are so extensive in nature as to require the hotel to be closed. * * *
"XI.
"Said Abraham Rosen has ordered and contracted for said additional construction work in the name of the lessee corporation, Palwi, Inc., and has incurred all costs and expenses of said improvements in the name of said lessee corporation, although said conduct on his part is contrary to the terms and provisions of the lease agreement hereto attached, in that the extent of lessee's liability for said improvements is $90,000.00. On the other hand, said Abraham Rosen, as the owner of the lessee corporation and as its dominating personality, is attempting to cancel said lease upon the ground that the lessee corporation has failed and refused to pay the costs of said additional improvements ordered by said Abraham Rosen in the name of the lessee corporation as aforesaid. Thus, Abraham Rosen, as the actual lessor of the property, though acting through the corporate entity of Beach Resort Hotel Corporation, is claiming the right to cancel the above-described lease upon an alleged default of the lessee corporation, for its failure to pay obligations incurred by said Abraham Rosen in the name of said lessee corporation. Thus, he is attempting to ensnare and entrap the lessee corporation and squeez(e) out the plaintiffs as owners of one-half interest therein."
Yetta Rosen and Abraham Rosen, her father, and the Beach Resort Hotel Corporation dominated by Abraham Rosen, denied these allegations of the bill of complaint and upon the issues so made, the Chancellor rendered his final decree as follows:
"(a) That the equities of this cause are with the plaintiffs.
"(b) That the lease given by Beach Resort Hotel Corporation to Palwi, Inc., as described in the bill of complaint is in full force and effect. Palwi, Inc., has discharged its obligation to advance $90,000.00 of improvements as provided therein.
"(c) Palwi, Inc., is obligated to return to the lessor, Beach Resort Hotel Corporation, an additional $110,000.00. *666 This is to be paid from the net proceeds derived from Palwi, Inc.'s operation of the leasehold.
"(d) All costs of improvements beyond the $90,000.00 expended by Palwi, Inc., are the obligation of Beach Resort Hotel Corporation, subject, nevertheless, to the right of that corporation to be repaid $110,000.00 from the net proceeds of the lessee's operation of the hotel under the lease.
"(e) $200,000.00 Receiver's Certificates heretofore issued by the Receiver, by and with the consent of all parties to this litigation, are decreed to be a lien upon the hotel property, and are decreed to be the primary obligation of Beach Resort Hotel Corporation, although the Court does not attempt to displace the lien of the holders of said Certificates upon the leasehold interest. Upon the failure of Beach Resort Hotel Corporation to pay said Receiver's Certificates, the Court will decree the sale of the Surfside Plaza Hotel to satisfy said Certificates. In the event said hotel fails to bring sufficient funds to pay said Certificates, then the leasehold will be decreed to be sold to satisfy the balance as may be due.
"(g) Palwi, Inc., is entitled to all the profits made by the receivership and the same shall be paid over to it.
"(h) The receiver is not discharged, and will not be discharged until the payment of the Receiver's Certificates, and he is retained for such purposes; nevertheless, he should immediately deliver possession of the said hotel to Palwi, Inc., acting by and through its officers and managers.
"(i) All costs of the receivership and all costs of this cause are charged against and are the obligation of Beach Resort Hotel Corporation, and they may be taxed by separate order of this Court after notice to all parties. The Court retains jurisdiction of this cause to enforce this decree."
After the final decree Rosen and his daughter continued in their efforts to oust Wieder and Amigo, and thereupon the lower court entered an injunctive order enjoining Yetta Rosen from interfering with the management of the lease property. It is not now open for question that Rosen and his corporation are responsible for the indebtedness incurred with the improvement program which was initiated, dominated and controlled by Rosen and his corporation.
The attempt is made to make it appear that the receiver, appointed by the court with the consent and the approval of the petitioners, purchased $155,000 worth of depreciable personal property without court authority and that such depreciable improvements are charged to the landlord under the theory that they are all permanent improvements. This contention is placed in the first question propounded and does not present a true picture of the situation. There was ample evidence before the Chancellor that the $155,000 of improvements in question were contracted for and ordered by Rosen prior to the appointment of a receiver. The record shows that all property, including such improvements, were ordered and contracted for by Rosen.
The Chancellor was familiar with all phases of this litigation, the affirmance by this Court of the final decree, and the denial of the petition for certiorari by this Court. The receiver was appointed by him and made reports to him. The orders and decrees of the Chancellor are presumed to be correct.
The various details of this prolonged litigation could be further discussed but would serve no useful purpose. The net result is that the Rosens were caught in a scheme whereby Wieder and Amigo were induced to spend all of the money they had put in this business and in addition thereto become obligated for sums contracted to be paid by Rosen and if they did not pay such sums contracted by Rosen, he would use their failure to pay as an excuse to cancel the lease and still own the property as improved by the money of Wieder and *667 Amigo. The Rosens are now in a court of equity and should not be permitted to profit by their own wrong.
The petition for writ of certiorari to review the order of the Chancellor on accounting made and entered on the 30th day of December, 1953, should be denied.
SEBRING, J., concurs.
THOMAS, J., concurs in conclusion.