746 So.2d 475 (1999)
RX SOLUTIONS, INC., a Florida Corporation and Ian D. Campbell, Appellants,
v.
EXPRESS PHARMACY SERVICES, INC., a Florida corporation, and Tmesys, Inc., a Florida corporation, Appellees.
Marcelle German, Appellant,
v.
Express Pharmacy Services, Inc., a Florida corporation, and Tmesys, Inc., a Florida corporation, Appellees.
Nos. 98-02627, 98-02649.
District Court of Appeal of Florida, Second District.
March 19, 1999.
Rehearing Denied April 8, 1999.
Guy W. Spicola and Robert J. Shapiro of Holland & Knight, LLP, Tampa for Appellants Rx Solutions, Inc., Ian D. Campbell, *476 and V. Stephen Cohen of Williams, Reed, Weinstein, Schifino & Mangione, P.A., Tampa, for Appellant Marcelle German.
Thomas J. Roehn and Christopher L. Griffin of Annis, Mitchell, Cockey, Edwards & Roehn, P.A., Tampa, and Susan B. Morrison of Morrison, Morrison & Mills, P.A., Tampa, for Appellees.
CASANUEVA, Judge.
These appeals arise from the trial court's entry of a temporary injunction against the former employees and in favor of the former employer for the alleged violation of non-solicitation and non-disclosure agreements. Because the trial judge resorted to parol evidence to interpret the parties' unambiguous contract, and in doing so essentially added a party to that contract, we reverse. As an independent ground for entry of the injunction, the court further found that the former employees disclosed or misappropriated a trade secret without the consent of the former employer and thus violated the Florida Uniform Trade Secret Act under section 688.003(1), Florida Statutes (1997). We find that the former employer did not establish the existence of a trade secret under that statute and thus cannot prevail on a claim for injunctive relief.
Ian D. Campbell and Marcelle D. German, in 1996 and 1994 respectively, signed "Non-Disclosure and Non-Solicitation Agreements" with Express Pharmacy Services (EPS). Mr. Campbell became the chief operating officer of EPS, and Ms. German director of management information services. Express Pharmacy Services is a Florida corporation engaged in the mail order pharmacy business. EPS's owner and president, Joseph Duane, also owned a corporation named Tmesys, Inc., which does not fill prescriptions for patients, as does EPS, but facilitates the workers compensation claims process by developing and using a cardless computer system.
Late in 1997 Mr. Duane sold both corporations, and within approximately two months Mr. Campbell and Ms. German resigned from EPS. Mr. Campbell then formed his own company, RX Solutions, Inc., which was to become a Tmesys competitor. Ms. German became associated with Mr. Campbell at RX Solutions. One of Tmesys's largest clients, Liberty Mutual, upon learning that Mr. Campbell had formed RX Solutions, contacted Mr. Campbell and asked for a proposal to handle the Liberty Mutual workers compensation claims. Cognizant of the danger of losing a substantial customer, both EPS and Tmesys applied to the court for injunctive relief, alleging that Mr. Campbell and Ms. German had violated their non-solicitation and non-disclosure agreements. After a hearing, the court entered an injunction prohibiting Mr. Campbell, Ms. German, and RX Solutions from soliciting or contacting former Tmesys clients and from using any online workers compensation claims system in its business.
Tmesys and EPS asserted that the non-disclosure and non-solicitation agreementsto which EPS was a party, which were signed by Mr. Duane as president of EPS, and which nowhere refer to Tmesyswere nevertheless ambiguous and that, even though not named, Tmesys was the actual beneficiary of the agreement. The only way this could be proven was by resort to parol evidence, which is proper when a contract's terms are incomplete or facially ambiguous. See Newbern v. American Plasticraft, Inc., 721 So.2d 351 (Fla. 2d DCA 1998). As this court stated in Landis v. Mears, 329 So.2d 323 (Fla. 2d DCA 1976), when a contract is rendered ambiguous by some collateral matter, it has a latent ambiguity, and the court must hear parol evidence to interpret the writing properly. In Landis, for example, the contract on its face revealed an ambiguity as to the capacity of the parties and their relationship to each other, specifically whether the lessee had entered the contract in his capacity as president of a corporation or as an individual. As defined by the First District in Ace *477 Elec. Supply Co. v. Terra Nova Elec., Inc., 288 So.2d 544, 547 (Fla. 1st DCA 1973), a latent ambiguity occurs "where the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among two or more possible meanings." To find a latent ambiguity in the agreements under review, one must determine that "Express Pharmacy Services, Inc.," which is a party to the contract and not a term susceptible of interpretation, must have two different meanings-i.e., Express Pharmacy Services, Inc. and Tmesys, Inc.
The plaintiffs could only enforce these agreements against Mr. Campbell, Ms. German, and RX Solutions if Tmesys were actually one and the same entity as Express Pharmacy Services, because any alleged solicitation had occurred only with a Tmesys customer and not with any EPS clients. As suggested above, it would have been futile for Tmesys's counsel to assert that the words "Express Pharmacy Services" suggested ambiguity of any kind in this agreement. To support their contention that the contract contained latent ambiguity, however, EPS and Tmesys pointed to contractual language binding Mr. Campbell and Ms. German to undertake duties that would be "designated from time to time as may be required to support EPS operations." Although this court finds no ambiguity in that covenant, the plaintiffs urged, and the trial court apparently agreed, that because Mr. Duane assigned Mr. Campbell and Ms. German to work on Tmesys projects, the non-disclosure and non-solicitation agreements extended also to that separate corporation. Having heard parol evidence about the relationship between Mr. Duane's two corporations (formed to perform two different functions), the trial court concluded that EPS and Tmesys were "two separate and independent entities" that were "inextricably interwoven in terms of the management, the organizational chart, the personnel involved and the decisions being made at the top of the organization."
The trial judge should have concluded with his finding that EPS and Tmesys were two separate entities and should not have allowed parol evidence concerning how Mr. Duane managed his employees to alter the terms of the non-solicitation agreement that Mr. Campbell and Ms. German signed when they commenced employment. As the trial court heard, Mr. Duane had legitimate business reasons for forming the two corporations. Mr. Duane, or EPS, drafted the non-solicitation and non-disclosure agreements. Had he chosen to do so, Mr. Duane could have required Mr. Campbell and Ms. German to sign agreements benefitting Tmesys, but he apparently decided against it.
As this court stated in Emergency Associates of Tampa, P.A. v. Sassano, 664 So.2d 1000 (Fla. 2d DCA 1995), agreements that prohibit competition-in this case by preventing solicitation-are in restraint of trade and in derogation of the common law. They must be strictly construed. Under no construction of this contract can it be said that Tmesys is a party to the agreement. The courts are powerless to rewrite contracts to make them more advantageous for one of the contracting parties, see Sassano, particularly in a situation when that party is the drafter, against whom the agreement must be construed.
Because Mr. Campbell, Ms. German, or RX Solutions did not violate any agreement with EPS, the party with which they contracted, the court erred in entering the temporary injunction on the non-solicitation and non-disclosure claim. On remand, the injunction is to be dissolved.
As an alternative ground for injunctive relief the plaintiffs argued that Mr. Campbell and Ms. German had misappropriated a trade secret by their use of a cardless online claims system at RX Solutions. The plaintiffs, however, did not meet their burden of proof of establishing *478 the existence of a trade secret. See § 688.002, Fla. Stat. (1997); Lovell Farms, Inc. v. Levy, 641 So.2d 103 (Fla. 3d DCA 1994); Templeton v. Creative Loafing Tampa, Inc., 552 So.2d 288 (Fla. 2d DCA 1989). Mr. Duane testified that he developed an online cardless claims system for processing workers compensation claims, but he did not testify that the system was unique to Tmesys. Mr. Campbell, in fact, testified to the contrary and identified a specific program developed by a South Carolina company that RX Solutions would use in its business. Thus, the plaintiffs further failed to prove that Mr. Campbell and Ms. German threatened to use Mr. Duane's alleged trade secret at their new company. See Lovell Farms; § 688.002, Fla. Stat. (1997). The fact that the defendants might have learned, during their employment with EPS, how to implement such a program is not tantamount to misappropriation of a trade secret. See Templeton; Health Care Management Consulting, Inc. v. McCombes, 661 So.2d 1223 (Fla. 1st DCA 1995).
It is apparent that the plaintiffs did not meet their burden of demonstrating a clear likelihood of prevailing on the merits. Because of this failure of specific proof, the trial court's overbroad injunction against the defendants' use of any online cardless system cannot stand under any view of the facts. Accordingly, the injunction must be dissolved as to the trade secrets claim.
As a final matter, we find that the trial court did not abuse its discretion either in setting the amount of the bond or in limiting witnesses after the defendants had been afforded an opportunity to present testimony and had waived further hearing.
Reversed and remanded.
FULMER, A.C.J., and NORTHCUTT, J., Concur.