941 So.2d 11 (2006)
METRO DEVELOPMENT GROUP, L.L.C., Appellant,
v.
3D-C & C, INC., S. Morris Keithendale, Inc., and S. Morris Swope, Appellees.
No. 2D05-4141.
District Court of Appeal of Florida, Second District.
August 4, 2006.
*12 Fredric S. Zinober and Simon Gaugush of Zuckerman Spaeder LLP, Tampa, for Appellant.
Celene Humphries and Dale Swope of Swope, Rodante P.A., Tampa, for Appellees.
CANADY, Judge.
In this case, we consider whether an option contract provision requiring that an option extension payment be made on a Saturday should be interpreted so that an extension payment made the following Mondaythe first business day after the day provided for in the optionwould be deemed timely. The trial court determined that the payment made on Monday was not timely and entered a final summary judgment in favor of the optionors, 3D-C & C, Inc., S. Morris Keithendale, Inc., and S. Morris Swope (the Swope defendants). The optionee, Metro Development Group, L.L.C., now appeals the ruling in favor of the optionors. For the reasons we will explain, we agree with the trial court's determination that the extension payment was not timely and that Metro's rights under the option therefore were terminated.

I. Background

The option contract was executed by Metro on August 17, 2004, and by the Swope defendants on August 18, 2004. Under the option contract, Metro paid an initial escrow deposit of $15,000 in return for the option to purchase property from the Swope defendants. Paragraph three of the contract dealt with the option term and payments. Specifically it provided that: (1) Metro was to deposit $15,000 into an escrow account; (2) on the forty-fifth day after the effective date of the contract, Metro had to either terminate the contract or, if Metro chose not to terminate the contract, the $15,000 escrow deposit was to be immediately disbursed to the Swope defendants; and (3) if Metro chose not to terminate the contract, it was required to make an additional escrow deposit of $20,000 and a payment of either $119,000 or $29,575 to extend the option, depending on the length of the extension that Metro desired. The contract required that the additional escrow deposit and extension payment be made on or before the forty-fifth day after the effective date. Additionally, the contract provided that "[a]t any time when these payments are not made within the time described, the purchaser[']s rights under this contract will terminate [and the] obligations of the seller to the [p]urchaser shall terminate."
Paragraph three refers simply to "the 45th day" and makes no reference to "business" days. Various other deadlines in the contract are stated without reference to "business" days. The sole reference to "business" days in the contract is contained in a provision that extends the time for the buyer's inspection of the property "until the expiration of five (5) business days from the date cured or waived by Purchasers, whichever last occurs."
Finally, the contract contains this general provision: "Time is of the essence of this agreement."
Since the contract provided that its effective date would be "the date on which the last of the parties execute" the contract, August 18, 2004, was the effective date of the contract. The forty-fifth day after that date fell on Saturday, October 2, 2004. On Friday, October 1, 2004, Metro paid an additional escrow deposit of $20,000 but failed to make any extension payment until the following Monday, October 4, 2004, when it tendered an extension payment of $29,575.
The Swope defendants rejected the $29,575 check and notified Metro that because *13 the $15,000 initial escrow deposit had not been immediately disbursed on October 2, 2004, the option had not been extended. Although the escrow agent asked the Swope defendants to reconsider, they refused to do so. Ultimately, the escrow agent filed a suit for interpleader and Metro filed a cross-claim seeking specific performance of the agreement or, alternatively, damages for breach of contract.
The Swope defendants then filed a motion to dismiss and, subsequently, a motion for summary judgment. In the summary judgment motion, the Swope defendants alleged that the option had expired when Metro failed to timely make the $29,575 extension payment. The Swope defendants also alleged that the $15,000 escrow deposit was not deposited in accordance with the escrow agreement.
Metro responded by arguing that the option should not have been terminated because paragraph three of the option contract contained a latent ambiguity by failing to address a situation that was not readily apparent to the parties when they drafted the contracti.e., what happened when the forty-fifth day fell on a Saturday, Sunday, or holiday. Metro also asserted that because the option contract contained a latent ambiguity, the trial court should look to custom and usage in the real estate industry and the conduct of the parties, both of which indicated that payment could be made the next business day after the deadline.
In granting summary judgment for the Swope defendants, the trial court found that the contract was clear on its face and no latent ambiguity existed. Consequently, the trial court refused to consider any parol evidence to ascertain the parties' intent and determined the $29,575 payment was not timely made.

II. Argument on Appeal

Metro argues that the trial court erred in concluding that the option contract did not contain a latent ambiguity. Metro contends that the contract's failure to delineate the rights and duties of the parties when the payment deadline falls on a nonbusiness day constitutes a latent ambiguity.
The Swope defendants argue in response that the option contract provided a clear payment deadline and did not contain language permitting exceptions for late payments when the deadline fell on a weekend day or holiday. The Swope defendants further argue that if Metro wanted to include "exception" language for circumstances such as those which occurred here, it should have included that in the contract.

III. Analysis

"Florida courts have adhered to the distinction [between patent and latent ambiguities] and ordinarily allow parol evidence where there is a latent ambiguity and reject it where there is a patent ambiguity." Landis v. Mears, 329 So.2d 323, 325-26 (Fla. 2d DCA 1976). Under Florida law, "when a contract is rendered ambiguous by some collateral matter, it has a latent ambiguity, and the court must hear parol evidence to interpret the writing properly." RX Solutions, Inc. v. Express Pharmacy Servs., Inc., 746 So.2d 475, 476 (Fla. 2d DCA 1999). "A latent ambiguityas distinct from a patent ambiguity arises `where the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among two or more possible meanings.'" Mac-Gray Servs., Inc. v. Savannah Assocs. of Sarasota, LLC, 915 So.2d 657, 659 (Fla. 2d DCA 2005) (quoting Ace Elec. Supply Co. v. Terra Nova Elec., Inc., 288 So.2d 544, *14 547 (Fla. 1st DCA 1974)). A latent ambiguity thus exists "[i]f a contract fails to specify the rights or duties of the parties under certain conditions or in certain situations, [and] the occurrence of such condition or situation reveals an insufficiency in the contract not apparent from the face of the document." Hunt v. First Nat'l Bank of Tampa, 381 So.2d 1194, 1197 (Fla. 2d DCA 1980).
Metro's argument that a latent ambiguity arose under the option contract is unpersuasive. The requirement of paragraph three for the payment of the extension payment on or before the forty-fifth day after the effective date of the contract is clear and unambiguous. This is not a case where "a contract is rendered ambiguous by some collateral matter," RX Solutions, Inc., 746 So.2d at 476, or where extraneous circumstances have revealed an "insufficiency in the contract," Hunt, 381 So.2d at 1197. The circumstance that the forty-fifth day after the effective date of the contract might fall on a weekend or holiday is a circumstance that is obvious.
The claim that a latentthat is, hiddenambiguity arose from that circumstance borders on the nonsensical. Any competent person agreeing to the terms of the option contract would know that there was a significant chance that such an eventuality would ensue. We thus reject the view that contracts which refer simply to "days" are affected by latent ambiguity. The implausibility of Metro's contention is highlighted by the provision in the contract extending the inspection period until five business days after the cure or waiver of title defects. The inclusion of that provision demonstrates that the parties were well aware of the difference between "days" and "business days."
Metro's reliance on a purported custom and usage in the real estate industry is unavailing. The fact that parties to real estate contracts often agree that the time for performance of various contractual obligations will be extended from a weekend day or holiday to the next business day does not create a latent ambiguity affecting a contract which does not contain such an agreement of the parties. The parties to a contract are free to contract as they choose and to provideor not to providethat contractual deadlines falling on a weekend or holiday be extended to the next business day.
Here, the parties to the option contract chose not to provide for such an extension. In addition, the parties agreed to include in the contract a provision that "[t]ime is of the essence"a provision which there is no reason to believe was not intended to apply to the obligation to make payments for extending the option. See C.W. Kistler Co. v. Hotel Martinique, Inc., 44 So.2d 288, 291 (Fla.1950) (stating that where a stipulated time is mentioned in an option contract, it becomes the essence of the contract, which must be performed within the time mentioned). Furthermore, Metro's failure to timely make the option extension payment was in no way attributable to any action or inaction of the Swope defendants. In such circumstances, a court should not rewrite the agreement of the parties and alter the obligation for timely performance to which Metro unequivocally agreed. See Beach Resort Hotel Corp. v. Wieder, 79 So.2d 659, 663 (Fla.1955) ("It is well settled that courts may not rewrite a contract or interfere with the freedom of contract or substitute their judgment for that of the parties thereto in order to relieve one of the parties from the apparent hardship of an improvident bargain.").

IV. Conclusion

The record before the trial court established that the extension payment was untimely. *15 The trial court correctly determined that there were no disputed issues of material fact and that the Swope defendants were entitled to judgment as a matter of law. We therefore affirm the final summary judgment in favor of the Swope defendants.
Affirmed.
FULMER, C.J., and WALLACE, J., Concur.