LEVINE, J.
The issue presented in this case is whether the insurance policy prevents the insured from having his public adjuster present during the examination under oath. We find, under the plain language of the insurance contract between the parties, that the insured was not prohibited from having his public adjuster present during the insured’s examination under oath.
Appellant sought to recover under his insurance policy for wind damage to his home. After inspecting the home’s damages appellee issued appellant a check for $14,416. Four years later appellant, while utilizing a public adjuster, submitted a new estimate for damages to his home totaling *188 $138,419. Appellant also invoked his right to appraisal pursuant to the insurance policy. Appellee indicated that it was investigating appellant’s claim and scheduled appellant for an examination under oath.
The insurance policy states the following:
SECTION I — CONDITIONS
[[Image here]]
2. Your Duties After Loss. In case of a loss to covered property, you must see that the following are done:
[[Image here]]
f. As often as we reasonably require:
[[Image here]]
(3) Submit to examination under oath, while not in the presence of any other “insured,” and sign the same....
The insurance policy specifically defined “insured” as:
3. “Insured” means you and residents of your household who are:
a. Your relatives; or
b. Other persons under the age of 21 and in the care of any person named above.
Appellant appeared at the scheduled examination under oath with his public adjuster. Appellee requested that the public adjuster leave the room before the examination was conducted. Appellant refused to instruct the adjuster to leave the examination, so appellee suspended the examination. As a result, appellee filed a complaint for declaratory relief, claiming that appellant failed to comply with the insurance policy. Appellant also filed claim for declaratory relief as a counterclaim.
The trial court determined that the insurance policy “would exclude public adjustors from attendance at sworn statements.” The court recognized that “[t]he language in the policy forbids any other insured to be present but is silent as to anyone else.” However, the court was concerned that restricting the interpretation of the policy to exclude only another “insured” would lead to results such as allowing the presence of the press, other insurance companies, or members of the general public. Further, the court was concerned as to the participation of the public adjuster, since the adjuster’s participation would be limited. The court determined that appellant’s public adjuster could not attend the examination under oath. As a result, this appeal ensues.
The interpretation of a contract by a trial court is subject to a de novo standard of review. Gossett & Gossett, P.A. v. Mervolion, 941 So.2d 1207, 1210 (Fla. 4th DCA 2006). “In construing a contract, the intention of the parties is ascertained from the language used in the instrument and the object to be accomplished and unless clearly erroneous, the construction placed upon a contract by the trial judge should be affirmed.” Id. However, “[w]here the language of a contract is clear and unambiguous, the court can give to it no meaning other than that expressed.” Wellington Realty Co. v. ColorAll Techs. Int’l, Inc., 951 So.2d 921, 922 (Fla. 4th DCA 2007).
We find that the plain language of the contract would allow appellee to exclude only another insured from the examination under oath. The clear language of the insurance policy states that appellant can be required to submit to an “examination under oath, while not in the presence of any other ‘insured.’ ” The contract defines “insured” as “you and residents of your household who are ... [y]our relatives; or ... [o]ther persons under the age of 21 and in the care of any person named above.” Clearly the public adjuster does *189 not fit into the plain language of the definition of “insured.”[1]
Further, to the extent that the policy is considered uncertain, we are compelled to construe the interpretation against the insurer. Rigel v. Nat’l Cas. Co., 76 So.2d 285, 286 (Fla.1954). Appellee, as the drafter of the contract, could have easily included language that would have excluded the public adjuster from the examination under oath. Instead, the policy delineated only the “insured” as being excluded from the examination under oath.[2]
By ignoring the plain language of the contract, the trial court essentially rewrote the contract. See Harrington v. Citizens Prop. Ins. Corp., 54 So.3d 999, 1002 (Fla. 4th DCA 2010) (“Courts may not ‘rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties.’ ”) (citation omitted); Beach Resort Hotel Corp. v. Wieder, 79 So.2d 659, 663 (Fla.1955) (“It is well settled that courts may not rewrite a contract or interfere with the freedom of contract or substitute their judgment for that of the parties thereto in order to relieve one of the parties from the apparent hardship of an improvident bargain.”).
We find the case of Widener v. Tennessee Farmers Mutual Insurance Co., No. 03A01-9506-CV-00203, 1995 WL 571868 (Tenn.App.Ct. Sept. 29, 1995), to be persuasive. In Widener, the insureds refused to submit to an examination under oath unless accompanied by their independent insurance adjuster. The appellate court reversed the trial court’s granting of a summary judgment in favor of the insurers, and found that “[i]n the policy there is no prohibition against the insured having a witness present during the giving of the statement under oath nor is there any limitation as to whom witnesses, if any, might be.” Id. at *1. The appellate court concluded that “[i]t would have been a simple matter for the insurance company to have written such a limitation or limitations into the policy.” Id. Similarly, in the present case, it would have been a “simple matter” for appellee to have written a restriction into the policy limiting those who could be present for the examination under oath.
In conclusion, we find that the trial court erred in failing to give effect to the plain language of the insurance policy. We are bound by the policy’s plain language and guided by the words of Judge Learned Hand, who wrote over a hundred years ago:
A contract has, strictly speaking, nothing to do with the personal, or individual, intent of the parties. A contract is an obligation attached by the mere force of law to certain acts of the parties, usually words, which ordinarily accompany and represent a known intent. If, however, it were proved ... that either party, when he used the words, intended something else than the usual meaning which the law imposes upon them, he would still be held, unless there were *190 some mutual mistake, or something else of the sort.
Hotchkiss v. Nat’l City Bank of N.Y., 200 F. 287, 293 (S.D.N.Y.1911). Similarly, in the present case, appellee should be “held” to the “words” and their “usual meaning.”

Reversed and remanded.

POLEN and HAZOURI, JJ., concur.

. Section 626.854(1), Florida Statutes (2009), defines a public adjuster as
any person, except a duly licensed attorney at law ... who ... prepares, completes, or files an insurance claim form for an insured or third-party claimant or who ... acts or aids in any manner on behalf of an insured ... in negotiating for or effecting the settlement of a claim or claims for loss or damage covered by an insurance contract.... Further, "[a] public adjuster may not give legal advice.” § 626.854(3), Fla. Stat.

. Courts have interpreted similar insurance provisions to allow the presence of the insured's attorney or own stenographer. 16 A.L.R 5th 412; see also 13 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 196:10 (3d ed. 2011).