ALTENBERND, Judge.
The defendants in this nursing home wrongful death action (collectively referred to as “LTC”) appeal an order denying their motion to compel arbitration. The Estate of Glenda J. Robinson filed the action, alleging negligence not resulting in death, for events that occurred while Mrs. Robinson was a resident of Long Term Care of St. Petersburg in 2008. Mrs. Robinson was admitted to and discharged from the nursing home on more than one occasion in 2008. We conclude that the trial court erred in refusing to enforce the arbitration agreement as it applied to Mrs. Robinson’s initial stay in the nursing home. But we conclude that the trial *987 court did not err in refusing to enforce the agreement as to Mrs. Robinson’s readmission on April 2, 2008, and on all occasions thereafter because LTC did not comply with its own contractual requirements.
For the portion of this lawsuit that is controlled by the arbitration agreement, each of the named defendants is involved in ownership or management of the nursing home and, under the plain language of the agreement, it is clear that the right to arbitrate inures to the benefit of all of the named defendants. However, the provision of the agreement limiting liability is unenforceable under the Florida Supreme Court’s decision Shotts v. OP Winter Haven, Inc., 86 So.3d 456 (Fla.2011). Nonetheless, the provision that limits liability can be severed from the agreement.
Mrs. Robinson was approximately sixty-five years old and suffered from numerous ailments, including depression, when she was first admitted to Long Term Care of St. Petersburg in February 2008. Although she was not legally incompetent, she had given her husband, Johnnie Earl Robinson, a durable power of attorney to act on her behalf.[1] The power of attorney authorized her husband to act on her behalf in broad terms and allowed him to “perform all and every act or acts, thing or things, in law needful and necessary to be done in and about the premises,[2] as fully, completely, and amply, to all intents and purposes whatsoever as I might or could do if acting personally.” Relying on the power of attorney, Mr. Robinson and LTC signed the various admission forms associated with Mrs. Robinson’s first visit to the nursing home on March 6, 2008. Among the forms was an arbitration agreement.
When the Estate filed this action, the defendants timely requested arbitration. The Estate argued that the arbitration agreement was unconscionable and otherwise unenforceable. In an order that did not explain its reasoning, the trial court denied arbitration.
There is no evidence that the signing of these documents involved procedural un-conscionability, and the trial court did not find that any procedural unconscionability occurred in this case. From the transcript of the hearing, it appears the trial court held that the agreement was unenforceable because it was substantively unconscionable. We conclude that the trial court erred in this ruling. See FL-Carrollwood Care, LLC v. Gordon, 72 So.3d 162 (Fla. 2d DCA 2011) (holding that arbitration agreement was not unconscionable where agree *988 ment did not limit punitive damages and limitation of liability provision was severa-ble if unenforceable).
In addition to providing for arbitration as a method to resolve disagreement, the arbitration agreement contains a limitation of liability. Because this provision “substantially diminishes or circumvents” the statutory remedies available to nursing home residents under section 400.023, Florida Statutes (2007), this provision is unenforceable. See Shotts, 86 So.3d at 474. The agreement, however, also contains a very broad severability clause, allowing any offending “sentence, word, phrase, paragraph or portion of the Agreement” to be severed if it is ever held to be invalid. As a result, we conclude that the limitation of liability provision of the arbitration agreement can be severed and is not a ground to declare the entire agreement invalid.
After Mrs. Robinson’s first stay at LTC, she was discharged and readmitted on several occasions. Upon each subsequent readmission, Mrs. Robinson signed her own paperwork. LTC’s readmission form is a very short one-page document. It states in bold letters:
THIS AGREEMENT ' MUST BE SIGNED BY ALL THE SAME PERSON/S WHO SIGNED THE ORIGINAL ADMISSION AGREEMENT, OR A NEW ADMISSION AGREEMENT MUST BE SIGNED.
Despite this bold provision, LTC did not have Mr. Robinson, the signatory on the original admission agreement, sign the agreement. Moreover, LTC did not use a new admission agreement by which Mrs. Robinson could have agreed to arbitration in her own right. Rather, LTC had Mrs. Robinson sign the readmission form.
LTC has cited to no case that holds that a person who elects to return to such a nursing home is bound on readmission to terms agreed to during an earlier visit by a person holding their power of attorney. LTC has not cited, nor have we found, any controlling precedent for the proposition that the holder of a power of attorney is unambiguously the “same person” as the person granting the power for these or similar contractual purposes. We conclude that the agreements drafted by LTC should not be construed in its favor. See RX Solutions, Inc. v. Express Pharmacy Servs., Inc., 746 So.2d 475, 477 (Fla. 2d DCA 1999). The readmission agreement requires that it be signed by the “same person/s who signed the original admission agreement.” It was not. If LTC wanted Mrs. Robinson to be bound by an arbitration agreement, it should have had her sign such agreement in her own right. It is conceivable that LTC could have drafted the readmission agreement to inform such a nursing home resident that she was bound by earlier agreements signed by another person holding her power of attorney, but it did not do so.
From the complaint in our record, we cannot determine how our holding affects this lawsuit. If the Estate claims that the negligence occurred only during the later admissions, it may be able to avoid arbitration. If the Estate claims that LTC was negligent during the first admission, it will need to submit to arbitration as to the claims arising from that time period. On remand, it may be useful for the trial court to require the Estate to plead its claim in sufficient detail to resolve this issue.
Affirmed in part, reversed in part, and remanded.
DAVIS and VILLANTI, JJ., Concur.

. The durable power of attorney was prepared and executed in Tennessee. Accordingly, the validity of the agreement is controlled by Tennessee law. See Carroll v. Gore, 106 Fla. 582, 143 So. 633, 637 (1932). Following supplemental briefing by the parties, this court concludes that the power of attorney is valid. Mr. Robinson was authorized by virtue of that power of attorney to sign the admission papers, including the arbitration agreement. We are not convinced that the law of Tennessee that governs the scope of a power of attorney or, alternatively, the right of third parties to rely upon Mr. Robinson as the agent for his wife under a power of attorney is different from the law of Florida, at least as it relates to his authority to admit his wife to a nursing home in Florida and to execute an arbitration agreement as part of that admission. As a result, we decline to decide whether the issue is one of Florida or Tennessee law.

. The powers described within "the premises” of this power of attorney are extensive, including "in general, to see that my needs are met and that I am provided for in the event I am unable to take care of myself.” The powers are not restricted to specific types of transactions or tasks. See Estate of Smith v. Southland Suites of Ormond Beach, LLC, 28 So.3d 103, 104 n. 1 (Fla. 5th DCA 2010) (distinguishing McKibbin v. Alterra Health Care Corp., 977 So.2d 612 (Fla. 2d DCA 2008)).